(No. 24972.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD DUCHANT, Plaintiff in Error.

*Opinion filed February 20, 1939.*

WM. SCOTT STEWART, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Edward Duchant, John Kill, James Thompson and Frank Green were indicted in the criminal court of Cook county for the crime of robbery and larceny. Green was adjudged insane and was not tried. Duchant, Kill and Thompson were tried by a jury. Kill and Thompson were found guilty of robbery while armed, and Duchant was found guilty of larceny of property of the value of $20. Duchant was sentenced to imprisonment in the penitentiary for a term of one to ten years. He has prosecuted this writ of error.

Jacob Kanzelbaum owned and operated a tavern at 2908 West Chicago avenue on the west side in Chicago. On September 10, 1937, at about 4:15 o'clock in the afternoon four men entered the tavern, approached the bar, posing as customers. Immediately thereafter, each man produced a gun and one of the four ordered the proprietor to raise his hands. Kanzelbaum prepared to resist. One or more of the robbers began shooting. One of them shot off the lock of a cash drawer and took therefrom about $500, including $150 in checks. The tavern proprietor made a practice of cashing checks of the employees of factories in

the neighborhood of the tavern. The date of the robbery was a pay-day of one of the factories whose employees patronized the tavern. Duchant was not one of the four men present in the tavern at the time of the robbery, but his time card disclosed that he was at work in the factory where he was then employed. He was an occasional customer at the tavern. He knew the proprietor by sight and in the same manner was known by the proprietor.

Duchant's connection with the robbery was sought to be established by proof that he took one or more of the robbers to Kanzelbaum's place of business previous to the date of the robbery and thereafter received $20 of the amount taken from the tavern. An alleged confession signed by Duchant, Green, Kill and Thompson was introduced in evidence. Duchant testified that the confession was obtained from him by force and ill-treatment of police officers. He denied participating in the crime. Previous to the beginning of the trial, the defendant moved for a severance and for the suppression of evidence. In order not to delay the trial of the case the State's attorney and counsel for the defendant agreed that the written motion to suppress might be presented and that the evidence be received during the course of the trial and the ruling of the court on the motion should be reserved until after the evidence in the case was heard. When the evidence had been presented the motion was denied. At whatever stage in the proceedings the ruling was made it would be confined to the circumstances of the arrest of the defendant and the seizure of the gun. Because the judgment must be reversed and the cause remanded for another trial for the error in denying the motion to suppress evidence, hereafter discussed, no further reference will be made to the evidence submitted upon the issue of the robbery. The question of severance will not arise on another trial and the error alleged upon the court's ruling refusing a severance need not be discussed.

The basis of the motion to suppress was that Duchant was illegally arrested without a warrant, and that, without having a search warrant, police officers took from Duchant's room a gun, cartridges and clips which, upon the trial, were introduced in evidence. Police officers went to the house where Duchant roomed about 5:30 o'clock on the morning of November 9, 1937. One of the officers knocked on the door and the officers were admitted by a woman designated as the defendant's landlady. One of the officers announced that they were police officers and asked if Duchant lived there. The woman replied in the affirmative, and said they would find him in the rear bedroom adjoining the kitchen. The officers went to the kitchen, and the testimony on behalf of the People, to all of which the defendant objected, is that the bedroom door was partly closed; that one of the officers pushed it open and Duchant was in the act of getting into bed; that one of the officers asked if he was Duchant and the latter admitted his identity. The officers, without having a warrant, placed Duchant under arrest. One of the officers testified that he asked Duchant why he was getting into bed and Duchant replied that he had a gun under his pillow and when he heard one of the men say they were police officers he put the gun away. Police officer Timothy J. O'Connell testified that Duchant said, "You will find it over there in the bureau drawer." The gun was fully loaded. The statement alleged to have been made by the defendant as to where the gun would be found is the only evidence from which it could be inferred that Duchant consented to the taking of the articles mentioned. At the time of the defendant's arrest and the seizure of the gun and cartridges the police officers did not know of the robbery of Kanzelbaum. Duchant was not arrested for the offense charged in the indictment, was not in the act of committing a crime and the reason for his arrest was not disclosed at the time it was made. When police officer

O'Connell, during the trial, was asked to relate the circumstances of the arrest of Duchant he began by stating, "We had information," and at that point the defendant's counsel interposed an objection and moved to strike the answer. The court struck the answer. There was no further attempt on behalf of the People to establish the reason for the arrest of the defendant or the seizure of the gun and cartridges. Duchant was subsequently questioned at the detective bureau and two police officers testified that Duchant related facts admitting his complicity in the robbery and stated that he had received $20 of the proceeds of that robbery. Duchant testified that he did not know Thompson or Kill previous to his arrest and that he had never gone with Green to the tavern where the robbery was committed, and that the first time he heard of the robbery was at the detective bureau after his arrest. He testified that he was in bed when the police officers appeared at his room on the morning of his arrest. He denied that he placed the gun in the bureau drawer. One Jean Eisenstein testified that the gun found in the bureau drawer in the defendant's room was one which belonged to her father, the deceased husband of the landlady conducting the rooming house where the defendant lived. Bullets found embedded in the tavern and bar were fired from a 38-caliber gun. The gun introduced in evidence was a 32-caliber gun. It was not established that the gun taken from the defendant's room at the time of his arrest was one used by the four men committing the robbery.

Whether or not in a given case there are reasonable grounds to warrant an arrest is a mixed question of fact and law. The reason for the arrest does not appear in the evidence upon the circumstances of the arrest. The court's ruling that the gun, cartridges and clips were admissible in evidence was upon the assumption that when Duchant told the police officers where the articles were that statement amounted to a consent to the search and seizure. In *People*

v. *McGurn,* 341 Ill. 632, it was disclosed that police officers searched McGurn for a gun while they had him in their custody. He told them where the gun was. It was held that the information so given the officers did not constitute a consent to take the gun under the circumstances disclosed. (*People* v. *Reid,* 315 Ill. 597.) To justify an officer in making an arrest without a warrant his ground for belief that the person to be arrested is guilty of a crime must be such as would influence the conduct of a prudent and cautious man under the circumstances. (*People* v. *Humphreys,* 353 Ill. 340; *People* v. *Scalisi,* 324 id. 131; *People* v. *McGurn, supra.*) The case of *People* v. *Brown,* 368 Ill. 177, is cited by the State's attorney to the effect that the question of illegal arrest could not affect the judgment of conviction. There was no question raised in the trial court in that case upon which to predicate the error alleged. The decision is not applicable to the facts in this case. Here the question is upon the motion to suppress and in the admission of evidence and the question was presented to the trial court at the proper time. Under the circumstances disclosed by the evidence, the court erred in denying the motion to suppress and in permitting the gun, cartridges and clips to be introduced in evidence. *People* v. *Fontana,* 356 Ill. 461; *People* v. *Evertson,* 310 id. 397; *People* v. *McGurn, supra; People* v. *Humphreys, supra.*

The judgment of the criminal court is reversed and the cause remanded for another trial.

*Reversed and remanded.*