THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* MICHAEL P. LOFTUS, Defendant-Appellee.

Fourth District   No. 4—82—0364

Opinion filed January 11, 1983.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Paul R. Welch, of Costigan & Wollrab, of Bloomington, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

This is an appeal by the State under the authority of Supreme Court Rule 604(a) (87 Ill. 2d R. 604(a)) from an order of the circuit court of McLean County which suppressed certain evidence. Proper certification was made as required by *People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501. We reverse and remand.

Defendant was charged in a criminal complaint with unlawful possession of more than 2.5 grams but not more than 10 grams of cannabis in violation of section 4(b) of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 704(b)). He filed a motion to suppress all items seized, including the cannabis. The police inventory attached to the motion lists a great variety of items from personal papers through cannabis to a spare tire and a sack of groceries. However, for purposes of discussion in this order only the cannabis, an opened six-pack of beer, a plastic cup and holder, some fireworks, and a "lock-jog" (an instrument apparently used to open locks on automobiles) are significant. The trial court's order denied suppression of the beer and plastic cup, but allowed suppression of all other items. We gather that defendant has also been charged with illegal transportation of liquor, but this matter is not before us.

A brief synopsis of the evidence adduced at the hearing on the motion to suppress follows. Officer Welch of the Illinois State University police department stated that at about 1 a.m. on February 14, 1982, he observed defendant's car leave a construction site on the

ISU campus. There had been illegal activity in and about this site of which the officer was aware, so he stopped defendant in his car. When the car door was opened, Welch observed a plastic cup of the type commonly used in the campus area for the serving of liquor in a holder on the car door. He met defendant at the rear of defendant's car and smelled the odor of alcohol on defendant's breath. The presence of the cup and holder and the odor led him to believe that there might be a liquor violation, but he was principally concerned about defendant's presence at the construction site.

Using his flashlight, Welch looked into defendant's car and observed a beer carton on the floor of the passenger side which contained five open bottles of beer and the lock-jog, which was on the back seat. The plastic cup contained a small amount of liquid which smelled like beer. He was concerned about the lock-jog since a similar device had been used in the past as a burglary tool. Defendant claimed that he had become lost and was simply turning around at the construction site and that he was an automotive mechanic and used the lock-job in his trade. At about the same time Welch opened a paper sack in defendant's car; he was looking for additional alcoholic beverages but found that the sack contained fireworks.

He then arrested defendant for illegal transportation of alcohol, possession of a burglary tool, and possession of fireworks. He handcuffed defendant and placed him in the back seat of his squad car; he also sent a radio dispatch asking for assistance and Officer Nagle and Corporal Saunders responded, arriving at the scene a short time later.

While Nagle stood guard over defendant, Welch entered defendant's car to retrieve the beer carton and other evidence which he had earlier observed. In reaching across the driver's seat, he observed with the aid of the dome light the open ashtray in which, he claimed, there were a marijuana butt and two pipes with cannabis residue in them. He then returned to the squad and after admonishing defendant of his *Miranda* rights, asked for permission to search defendant's car. Defendant inquired as to alternatives and Welch informed him that he would impound the car and seek a search warrant. While the evidence is somewhat diverse as to the exact wording, it appears that defendant told Welch to proceed with the search and that he would find marijuana in the glove compartment. Welch then opened that compartment and discovered a plastic bag containing a substance which afterwards proved to be marijuana.

Nagle then drove defendant's car to police headquarters with Welch following with defendant in his custody. There defendant executed a waiver of rights and consent to search after these forms had

been explained to him.

The testimony of Nagle and Saunders was essentially corroborative of that of Welch. Defendant's testimony was in many respects parallel to that of the officers. He stated that he was under arrest at the time indicated by Welch, saying "*** I didn't offer any resistance. I, you know, went along with his conditions, and he put the handcuffs on me." He also indicated that he consented to the search of his car and signed the forms at headquarters because he "had to," although he did not regard this as a threat. The significant variations in defendant's testimony are: (1) the ashtray was closed; (2) the dome light in his car was inoperative; and (3) he was never near the construction site.

The trial court entered a written order which contained the following findings:

"1. That the traffic stop made by Officer Welch of Defendant's vehicle was reasonable in light of all of the circumstances.

2. That the visual search of the interior of the vehicle by Officer Welch was reasonable and the discovery of the five opened bottles of Michelob and a plastic cup in a holder by the driver's window was not in violation of any rights of the Defendant, and the five opened Michelob bottles and the cup were properly seized.

3. That the search of the remainder of the interior of the car, the ashtray and glove box included, and the trunk area, was in violation of the Defendant's Constitutional Rights, in that there was no valid consent given by the Defendant, and the search is not justified on any other theory in that it was not incident to an arrest, was not pursuant to a Search Warrant, and did not constitute a Plain View seizing of the objects.

4. All other items, excepting the five opened Michelob beer bottles and the aforementioned cup, should be suppressed."

The State posits three theories upon which the trial court's order is erroneous and upon which the search may be upheld: (1) consent; (2) search incidental to an arrest; or (3) the "automobile exception" of *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, and *Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975.

■ On review, a trial court's findings on a defendant's motion to suppress should not be set aside unless clearly erroneous. (*People v. Clark* (1982), 92 Ill. 2d 96, 440 N.E.2d 869.) This is especially true of a factual matter such as consent. (*People v. DeMorrow* (1974), 59 Ill. 2d 352, 320 N.E.2d 1.) Since there was some ambivalence in the testi-

mony regarding consent and also since there was some element of coercion present both at the scene of the search and afterwards at headquarters, we will accept the trial court's finding of fact that there was no consent.

However, the matter is considerably different regarding a search incident to an arrest. Arrest is a mixed question of fact and law. (*People v. Duchant* (1939), 370 Ill. 650, 19 N.E.2d 590.) Moreover, there is no question of credibility in the instant case. Welch testified that he did arrest defendant and defendant testified that he submitted to arrest. We may therefore examine the finding as a matter of law and we find that the trial court's ruling is clearly erroneous.

This case is controlled by *New York v. Belton* (1981), 453 U.S. 454, 460, 69 L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864, wherein the Supreme Court said:

"Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, ***."

Footnote 4 to the foregoing passage states:

" 'Container' here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk."

In *Belton* the search was conducted after the arrest. Our supreme court has adopted an even broader rule; in *Clark* the search preceded the arrest and yet was held valid under the authority of *Belton*. We are aware of certain appellate court decisions which are contrary. (*People v. Lee* (1976), 41 Ill. App. 3d 502, 354 N.E.2d 543; *People v. Hendrix* (1974), 25 Ill. App. 3d 339, 323 N.E.2d 505; *People v. Valdez* (1980), 81 Ill. App. 3d 25, 400 N.E.2d 1096.) However, these cases predated *Belton* and *Clark* and relied upon the rationale of *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034. The *Belton* court was aware of *Chimel* but elected to amplify its doctrine in order that a straightforward rule might be established for the police in dealing with cases of this variety.

Defendant has argued that *Belton* defines a strict perimeter for a

search and therefore limits it to what initially provoked it, in this case, liquor, burglary tools and fireworks. Therefore, he reasons, whether the ashtray were open or shut, the search of the glove compartment was improper. We do not read *Belton* in this fashion. *Belton*'s perimeter was spatial—the passenger compartment of the car—not qualitative. In fact, in *Belton* it was a marijuana envelope which provoked the search, but the real contraband at issue was cocaine found in a jacket pocket in the vehicle.

■ There is some language in *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157, which indicates that the scope of a warrantless search is not defined by the container but by the object of the search. However, this must be read with the language immediately preceding: "The scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause." (456 U.S. 798, 823, 72 L. Ed. 2d 572, 593, 102 S. Ct. 2157, 2172.) It is elementary that if an affidavit for search warrant indicates that illegal aliens are being sought, it is not broad enough to cover containers too small for an alien. We do not view *Ross* as limiting *Belton*, but rather expanding its doctrine to reach from the passenger compartment into the trunk area. Our supreme court cited both *Belton* and *Ross* as support for its holding in *Clark*.

■ Defendant further argues that the *Belton* rationale cannot apply in this case since he was handcuffed and in the back seat of a squad car, presumably a number of feet removed from his own vehicle. The *Belton* court spoke of the fact that objects within a passenger compartment, including a weapon, might be grabbed by the arrestee. Professor LaFave answers:

> "A second uncertainty asserted by Justice Brennan concerns the arrestee's proximity—must 'the suspect [be] standing in close proximity to the car when the search is conducted?' Given the *Belton* majority's avowed purpose of foregoing the need for case-by-case determination of an arrestee's control of the car, the answer appears to be no. Thus, under *Belton* a search of the vehicle would be allowed even after the defendant was removed from it, handcuffed, and placed in the squad car." (2 W. LaFave, Search and Seizure sec. 7.1, at 136 (1982 Supp.).)

Indeed, Justice Brennan in his dissent stated:

> "Under the approach taken today, the result would presumably be the same even if Officer Nicot had handcuffed Belton and his companions in the patrol car before placing them under arrest ***." 453 U.S. 454, 468, 69 L. Ed. 2d 768, 780, 101 S. Ct.

1860, 2868.

We therefore hold that the search in the instant case was one incidental to a lawful arrest and therefore proper. We need not address the People's third alternative contention regarding the automobile exception.

The order of the circuit court of McLean County is therefore reversed and the cause is remanded to that court for further proceedings.

Reversed and remanded.

TRAPP and MILLER, JJ., concur.