754 A.2d 463

**STATE of Maryland**

v.

**Benjamin T. FERNON.**

**No. 2852, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

June 28, 2000.

42

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Scott G. Patterson, State's Atty. for Talbot County, Easton, on the brief), for appellant.

Stephanie A. Shipley (Campen & Walsworth, P.A., on the brief), Easton, for appellee.

Argued before HOLLANDER, EYLER and ROBERT L. KARWACKI (Retired, specially assigned), JJ.

HOLLANDER, Judge.

In this expedited appeal filed by the State pursuant to Maryland Code (1998 Repl.Vol., 1999 Cum.Supp.), 12–302(c)(3) of the Courts and Judicial Proceedings Article ("C.J."), the State challenges an Order of the Circuit Court for Talbot County suppressing marijuana and drug paraphernalia recovered from a locked console in the passenger compartment of a motor vehicle belonging to Benjamin Fernon, appellee. The vehicle search was conducted shortly after Fernon was arrested on a charge of driving while intoxicated ("DWI"), and while he was handcuffed and seated in the police car with the seat belt fastened. As a result of the search, Fernon was also charged with possession with intent to distribute marijuana and related drug offenses.

On January 11, 2000, the State timely noted its appeal from the suppression order.[1] Thereafter, on January 28, 2000, Fernon pleaded guilty to the offense of driving under the influence of alcohol, after expressly waiving any potential double jeopardy claims regarding the drug charges that were the subject of his motion to suppress. The circuit court then granted Fernon probation before judgment and placed him on supervised probation for one year.

In its appeal, the State poses one question for our consideration:

> Did the lower court err in granting Fernon's motion to suppress on the ground that the search of Fernon's car was not a proper search incident to arrest?

To answer that question, we must determine whether the police conducted a lawful vehicle search incident to Fernon's custodial arrest for DWI, given that, at the time of the search, Fernon was handcuffed and placed in a police car at the scene. For the reasons stated below, we conclude that the search was conducted incident to appellee's arrest and that the circuit court erred in suppressing the evidence recovered from appellee's vehicle. Accordingly, we shall reverse and remand.

## FACTUAL SUMMARY

Our review of the trial court's decision with respect to a suppression motion "ordinarily is limited to information contained in the record of the suppression hearing." *Cartnail v. State*, 359 Md. 272, 282, 753 A.2d 519 (2000); *see Ferris v. State*, 355 Md. 356, 368, 735 A.2d 491 (1999); *Trusty v. State*, 308 Md. 658, 670, 521 A.2d 749 (1987); *Hardy v. State*, 121 Md.App. 345, 353, 709 A.2d 168, *cert. denied*, 351 Md. 5, 715 A.2d 964 (1998). In our review, we give due regard to the motion judge's opportunity to assess the credibility of the witnesses, *McMillian v. State*, 325 Md. 272, 281–82, 600 A.2d

---

1. The record on appeal was filed in this Court on March 9, 2000. Therefore, pursuant to C.J. § 12–302(c)(3)(iii), our decision must be filed by July 7, 2000.

430 (1992), and we defer to the factual findings of the suppression judge, unless clearly erroneous. *See Ferris,* 355 Md. at 368, 735 A.2d 491. Moreover, we review the evidence in the light most favorable to the prevailing party. *Riddick v. State,* 319 Md. 180, 183, 571 A.2d 1239 (1990). Nevertheless, we must make our own independent constitutional appraisal as to whether the search was lawful. *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Cartnail,* 359 Md. at 282–83, 753 A.2d 519; *Jones v. State,* 111 Md.App. 456, 465, 681 A.2d 1190, *cert. denied,* 344 Md. 117, 685 A.2d 451 (1996). This is accomplished by reviewing the law and applying it to the first-level facts found by the suppression judge. *In re Tariq A–R–Y,* 347 Md. 484, 488–89, 701 A.2d 691 (1997); *Riddick,* 319 Md. at 183, 571 A.2d 1239; *Howard v. State,* 112 Md.App. 148, 156, 684 A.2d 491 (1996), *cert. denied,* 344 Md. 718, 690 A.2d 524 (1997).

At the suppression hearing held on December 16, 1999, Maryland State Trooper C. Lewis was the only witness. Although the material facts are undisputed on appeal, the parties hotly contest the application of the law to the facts.

Appellee was traveling westbound on U.S. Route 50 during the early morning of July 10, 1999. At approximately 1:38 a.m., Trooper Lewis effectuated a traffic stop of a 1990 Jeep Wrangler because it was exceeding the posted speed limit. At the time, Lewis was accompanied by Trooper Anthony Balchun, who was an officer in training. Fernon was identified as the driver of the Jeep, and he was the sole occupant of the vehicle. Both officers approached the driver's window of the Jeep. Lewis testified that, as he approached the driver's window of the Jeep, he "detected a strong odor of an alcoholic beverage about the breath and person of Mr. Fernon." Thereafter, Balchun asked appellee to exit his vehicle in order to perform a field sobriety test, which was conducted on the shoulder of the road in the area between the Jeep and the police vehicle.[2]

---

2. The record does not specifically indicate the distance of the police vehicle from the Jeep.

At approximately 1:49 a.m., after the completion of the field sobriety test, appellee was placed "under arrest for drinking and driving." He was then handcuffed behind his back and placed in the front passenger seat of the police vehicle with the seat belt fastened. At that point, Lewis conducted "a quick cursory search" of the police vehicle, which took "a minute or two," in order "to make sure no personal effects were laying about."

Trooper Lewis and Trooper Balchun then conducted a search of appellee's vehicle. In response to questioning, Trooper Lewis acknowledged that the vehicle search was "solely based on a search incident to [appellee's] custodial arrest based on the DWI."

Using appellee's keys, Trooper Balchun unlocked the center console located between the driver and passenger seats in the Jeep.[3] Lewis described the console as about six inches wide, ten to twelve inches long, and six or seven inches deep. From inside the console, Lewis recovered a large plastic bag containing six smaller, individually wrapped clear plastic baggies, each containing suspected marijuana. A cellophane wrapper, similar to the kind found on a cigarette pack, was also found in the console, and it contained suspected marijuana. In addition, a copper smoking pipe was located in the console. According to Lewis, the items were recovered from the Jeep within minutes of appellee's arrest at 1:49 a.m. Lewis also testified that, at 1:58 a.m., he notified the Easton Barracks that "CDS" had been recovered from the Jeep. Therefore, the search was completed no later than nine minutes after appellee's arrest.

In moving to suppress the evidence recovered from the Jeep, appellee did not contest the legality of his arrest or complain because the items were seized from a locked console in the vehicle. Rather, defense counsel maintained that the evidence was obtained in violation of appellee's rights under

---

**3.** Lewis testified that he did not actually witness Balchun unlock the console.

the Fourth Amendment, because the police conducted an unlawful warrantless search. Relying on the principles of *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and other cases, the defense attorney asserted that the police did not perform a lawful search incident to arrest, because Fernon was handcuffed and placed in the patrol car at the time of the search. Thus, she argued that when the search was made, the Jeep no longer constituted the immediate surrounding area to which Fernon had access; he could not have obtained a weapon from the Jeep or destroyed evidence in it. Consequently, defense counsel maintained that the police exceeded the permissible scope of a search incident to arrest. The State countered that the police were entitled under *Belton* and other cases to conduct a contemporaneous search of a locked container in the passenger compartment of the Jeep, incidental to Fernon's lawful arrest, notwithstanding that he was handcuffed and placed in the police car at the time of the search.

The trial court granted appellee's suppression motion in a written Order filed on December 28, 1999. The court reasoned:

The State has argued that the search of the [appellee's] vehicle was a valid search "incident to a lawful arrest" even when the [appellee] was handcuffed in the police vehicle. *See New York v. Belton,* 453 U.S. 454 [101 S.Ct. 2860, 69 L.Ed.2d 768] (1981); *see also State v. Ott,* 85 Md.App. 632 [584 A.2d 1266] (1991), *rev'd on other grounds,* 325 Md. 206 [600 A.2d 111] (1992); *[United States] v. Mitchell,* 82 F.3d 146 (7th Cir.1996); *[United States] v. Willis,* 37 F.3d 313 (7th Cir.1994); and *[United States] v. Mans,* 999 F.2d 966 (6th Cir.1993).

The State has, however, failed to convince the Court that the search was valid. Initially, the Court recognizes that the rationale for a search incident to a lawful arrest was to prevent an arrestee from "gain[ing] possession of a weapon or destructible evidence." *Chimel v. California,* 395 U.S. 752, 763 [89 S.Ct. 2034, 23 L.Ed.2d 685] (1969). Further, the Court notes that the State must overcome the presump-

tion that all warrantless searches "are per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well delineated exceptions." *Katz v. [United States]*, 389 U.S. 347, 357 [88 S.Ct. 507, 19 L.Ed.2d 576] (1967).

While a search "incident to a lawful arrest" is one of those exceptions, the facts in this case do not support the exception as laid out in *Belton.* The Court held in *Belton* that a "lawful custodial arrest creates a situation justifying the **contemporaneous** warrantless search of the arrestee and of the immediately surrounding area." *Id.* at 463 [101 S.Ct. 2860] (emphasis added). In *Belton*, however, after the occupants were arrested, a search of the vehicle was conducted while the arrestees stood immediately outside of the vehicle. Further, the officer previously smelled burning marijuana and viewed an envelope on the driver's side floor area containing suspected marijuana.

The case at bar is sharply distinguished by the facts in *Belton.* In the case *sub judice*, the [appellee] presented virtually no threat because he was seated and handcuffed in the front seat of the Maryland State Police patrol car. Further, the *Belton* Court specifically stated in a footnote that "[o]ur holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of the searches incident to lawful custodial arrest." *Belton*, 453 U.S. at 463, fn. 3 [101 S.Ct. 2860]. The principles established in *Chimel* do not permit the scope of a "search incident to arrest" to extend to the passenger compartment of a vehicle when the arrestee has been removed from its proximity and the search is not contemporaneous to the arrest. The *Chimel* Court placed temporal and spatial limitations on searches incident to a lawful arrest, excusing compliance with the warrant requirement only when the search is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. *See Chimel*, 395 U.S. at 762–63 [89 S.Ct. 2034].

■■■■■■■■■■

\* \* \*

The Court is convinced that in the case *sub judice* that there was no valid evidence or reason for the police officers to be concerned that the [appellee] was either a threat to them or might destroy evidence. Therefore, the search incident to the lawful arrest was not valid and the contraband seized from the search must be suppressed.

### DISCUSSION

■ On appeal, the State concedes that Fernon had "little or no chance of destroying evidence or obtaining a weapon from his vehicle," because he was handcuffed and seated in the police car at the time of the search. Nevertheless, the State argues that the trial court erred in granting appellee's motion to suppress the contraband found in his car, because the police executed a lawful search incident to appellee's arrest, and the search was not rendered unconstitutional as a result of appellee's secured status at the time of the search.

Based on the underlying rationale of the search incident to arrest doctrine, including the principles elucidated in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, appellee argues that "the scope of a search incident to arrest [does not] extend to the passenger compartment of a vehicle when the arrestee has been removed from its proximity and the search is not contemporaneous to the arrest." Appellee maintains that the search offended the Fourth Amendment because it was not confined to the immediate vicinity of appellee's arrest, it was arguably "too remote," and any threat to the officers' safety presented by appellee was "completely removed" when appellee was handcuffed and placed in the police car.

The parties agree, however, that the police did not conduct an inventory search of the vehicle. Moreover, at oral argument, the State confirmed that it does not rely on the automobile exception to the warrant requirement, embodied in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543

(1925), and its progeny, as the justification for the search, presumably because the police lacked probable cause to search the Jeep. Additionally, as we noted, appellee does not challenge the legality of his arrest or complain because the drugs were recovered from a locked console. Therefore, our inquiry focuses solely on whether the police conducted a lawful search incident to arrest.

We begin our analysis with the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Owens v. State,* 322 Md. 616, 622, 589 A.2d 59, *cert. denied* 502 U.S. 973, 112 S.Ct. 452, 116 L.Ed.2d 470 (1991). It guarantees, *inter alia,* "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." Nevertheless, "[t]he Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (citing *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)); *see United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *Rosenberg v. State,* 129 Md.App. 221, 239, 741 A.2d 533 (1999), *cert. denied,* 358 Md. 382, 749 A.2d 173 (2000). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A warrantless search incident to an individual's lawful arrest is one of these exceptions. *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Ricks v. State,* 322 Md. 183, 188, 586 A.2d 740 (1991); *Rosenberg,* 129 Md.App. at 239, 741 A.2d 533. Two historical rationales undergird the validity of a warrantless search incident to a lawful arrest: (1) the need to disarm the suspect to prevent the suspect from resisting arrest or effecting escape, and for the safety of the officers and others; and (2) the need to prevent concealment or destruction of evidence. *Belton,*

453 U.S. at 457, 101 S.Ct. 2860; *Robinson,* 414 U.S. at 234, 94 S.Ct. 467; *Chimel,* 395 U.S. at 763, 89 S.Ct. 2034.

In the seminal case of *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, the Supreme Court concluded that the warrantless search of the defendant's entire house, conducted incident to and contemporaneous with his arrest in the house for a burglary charge, was unreasonable under the Fourth and Fourteenth Amendments, because the search "went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him." *Id.* at 768, 89 S.Ct. 2034. In the Supreme Court's view, there was no "justification" for searching "any room other than that in which an arrest occurs," or "for searching through all the desk drawers or other closed or concealed areas in that room itself." *Chimel,* 395 U.S. at 763, 89 S.Ct. 2034. The Court explained:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.... There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Id.* at 762–63, 89 S.Ct. 2034. *See James v. Louisiana,* 382 U.S. 36, 37, 86 S.Ct. 151, 15 L.Ed.2d 30 (1965) (holding that a search of a petitioner's home after his arrest on the street two blocks away "cannot be regarded as incident to arrest").

Some twelve years later, in *Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, the Supreme Court considered the application of *Chimel* to a search of the passenger compartment of an automobile, conducted incident to the arrest of the driver and three passengers. There, the police vehicle stopped a speeding car and determined that none of the men owned the car or was related to the owner. As the officer spoke with the men, he noticed the smell of "burnt marijuana" and saw a suspicious envelope on the floor of the car. The officer then directed all the men to exit the vehicle, patted them down, separated them, and retrieved the envelope, in which he found marijuana. Thereafter, the officer searched the passenger compartment of the vehicle and found Belton's jacket on the back seat. The officer then searched the jacket and discovered cocaine in the zippered pocket. At Belton's trial for possession of cocaine, he sought to suppress the drugs seized from his coat.

The New York Court of Appeals held that the search was unlawful because, when it was performed, there was no danger that any of the arrestees might gain access to the vehicle or the jacket. Disagreeing with the reasoning of that court, the Supreme Court reversed.

The Supreme Court recognized that, in numerous cases around the country, courts had experienced difficulty in applying the search incident to arrest doctrine. *Belton*, 453 U.S. at 458, 101 S.Ct. 2860. The Court also acknowledged the difficulty of finding a "workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant." *Id.* at 460, 101 S.Ct. 2860. Thus, the Court sought to establish a "straightforward rule" regarding "the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants," 453 U.S. at 459, 101 S.Ct. 2860, which would avoid the necessity for " 'subtle nuances and hairline distinctions' " that are difficult for an officer in the field to apply. *Id.* at 458, 101 S.Ct. 2860 (citation omitted). Accordingly, the Court endeavored to craft " [a] single familiar standard ... to guide police officers, who

have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.'" *Id.* at 458, 101 S.Ct. 2860 (quoting *Dunaway v. New York*, 442 U.S. 200, 213–14, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)). That effort culminated in the Supreme Court's holding in *Belton:* "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460, 101 S.Ct. 2860 (footnote omitted). So long as "[a] custodial arrest ... [is] based on probable cause," then "no additional justification" is needed for the search incident to arrest. *Id.* at 461, 101 S.Ct. 2860. Indeed, such a search is a "reasonable intrusion under the Fourth Amendment." *Id.*

Applying the same logic, the *Belton* Court included within the search incident the right to search containers located in the passenger compartment of a vehicle. It reasoned that a container, like the passenger compartment itself, is within reach of the arrestee. *Id.* at 460, 101 S.Ct. 2860. The Court defined a "container" as "any object capable of holding another object [and] includes *closed* or *open* glove compartments, consoles, and other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *Id.* at 461 n. 4, 101 S.Ct. 2860 (emphasis added).[4]

---

**4.** In the recent case of *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), the Supreme Court declined to extend the search incident exception to a routine traffic stop that does not permit or result in an arrest. Although the defendant in that case was not arrested, the officer searched the car without consent or probable cause and found marijuana and drug paraphernalia in the vehicle. Analogizing the traffic stop to a "Terry stop," *id. at* 117, 119 S.Ct. 484 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)), the Supreme Court reasoned that neither of the two bases for the search incident exception were present. As to the prong concerning the need to discover and preserve evidence, the Court said: "Once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that [routine traffic] offense had been obtained. No further evidence of excessive speed was going to be

Significantly, the *Belton* Court rejected the contention that the search and seizure was not incident to arrest because the police obtained "exclusive control" of the jacket. The Court said: "[U]nder this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his 'exclusive control.' " *Belton*, 453 U.S. at 461 n. 5, 101 S.Ct. 2860. Moreover, the Court recognized that the validity of a search incident to arrest "does not depend on ... the probability in a particular arrest situation that weapons or evidence would in fact be found...' " *Id.* at 461, 101 S.Ct. 2860 (citation omitted).

Although *Belton* involved the search of a motor vehicle, the Court's decision was not premised on the automobile exception to the warrant requirement. Moreover, *Belton* has generally been construed to apply to all searches incident to arrest; its application has not been limited to vehicle searches. *State v. Smith*, 119 Wash.2d 675, 835 P.2d 1025, 1028 n. 3 (1992).

Nevertheless, appellee contends that *Belton* is factually inapposite because any threat posed by Fernon was dissipated when he was handcuffed and placed inside the police car. By contrast, in *Belton* the threat was not alleviated because the four "suspects were standing by the side of the car ..." when the vehicle was searched. *Belton*, 453 U.S. at 457, 101 S.Ct. 2860.

In resolving whether the search of appellee's vehicle fell within the ambit of *Belton* or, instead, was unlawful because of appellee's secured status in the police vehicle during the search, we are aware of only one reported Maryland appellate case that has addressed the issue of a vehicle search incident to arrest, while the arrestee is handcuffed.[5] *See State v. Ott,*

---

found either on the person of the offender or in the passenger compartment of the car." *Knowles*, 525 U.S. at 118, 119 S.Ct. 484. Moreover, the Court said that the danger posed to the officer during the stop was less than that posed by an arrest. *Id.* at 119, 119 S.Ct. 484.

5. Although *McCree v. State*, 33 Md.App. 82, 363 A.2d 647 (1976), has some factual similarities, we did not address a search incident to arrest.

85 Md.App. 632, 647, 584 A.2d 1266 (1991), *rev'd on other grounds,* 325 Md. 206, 600 A.2d 111, *cert. denied,* 506 U.S. 904, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992). In *Ott,* the trial court found illegal a vehicle search conducted incident to arrest, because the arrestee was handcuffed and could not have reached the glove compartment of his car, where the contraband was located. This Court rejected that reasoning, stating: "[U]nder *Belton,* an officer may conduct a vehicle search even though the defendant has been removed from the car, handcuffed, and even placed in the police cruiser." *Id.* at 647, 584 A.2d 1266 (citing 3 Wayne R. LaFave, *Search and Seizure,* § 7.1(c), at 15 n. 73 (1987 and Supp.1991)). Thus, we concluded that the police were entitled to conduct a contemporaneous vehicle search as an incident of a lawful arrest, including the car's glove compartment, notwithstanding the absence of any threat to officer safety or the risk of destruction of evidence once the arrestee was handcuffed.

Although *Foster v. State,* 297 Md. 191, 464 A.2d 986 (1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984), did not involve a car search, and the facts are distinguishable from the case *sub judice,* the Court's reasoning is nonetheless persuasive. Following Foster's conviction for murder, she complained on appeal, *inter alia,* that the police conducted an unlawful search incident to arrest because she was handcuffed at the time of the search. The Court observed that it was considering for the first time "whether a search of an area beyond an arrestee's person is permissible if

---

In *McCree,* one of the appellants challenged a vehicle search conducted by the police at the time of arrest, because the appellant was handcuffed and placed in the back of the police car. In the search, the police recovered a purse from the front seat of the vehicle, which linked the appellant to a murder and robbery. Relying on *Chimel,* the appellant argued that the police exceeded "the permissible search perimeter." *Id.* at 94, 363 A.2d 647. We said that we did not need to decide whether the police conducted a lawful search incident to arrest, because we were satisfied that the police made a lawful warrantless search under *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Moreover, because the car was stolen, we found that the appellant had no standing to object to the search. *McCree,* 33 Md.App. at 94, 363 A.2d 647.

made after the person has been handcuffed." *Id.* at 219, 464 A.2d 986.

The defendant was arrested in a small motel room, approximately two feet from a nightstand that had an open drawer. Upon arrest, the police handcuffed the defendant, placing her hands behind her back, and then searched the immediate area. Incriminating evidence was recovered from the drawer of the nightstand. In upholding the search, the Court said:

> Under the circumstances here, it was reasonable for the arresting officer to search for a weapon in a partially open drawer located within two feet of the accused, even though she was then handcuffed. The fact that the accused was handcuffed necessarily restricted her freedom of movement and, consequently, the area within her reach, but did not necessarily eliminate the possibility of her gaining access to the contents of the nightstand's partially open top drawer. Indeed, the partially open top drawer of the nightstand—a natural place for a weapon to be hidden—remained an area of easy access for the accused, particularly if she had been able to break free of restraint. Thus, in order for the arresting officer to protect himself and the Maryland police officer then present from potential harm, it was necessary for the arresting officer to search for weapons in the nightstand drawer, an area within the handcuffed accused's reach. Moreover, the arresting officer made no effort to search anywhere other than the area immediately around the accused. Under these circumstances, the search and seizure incident to the accused's arrest was reasonable, and the evidence seized was properly admitted.

*Id.* at 220, 464 A.2d 986.

Although the case of *United States v. Han,* 74 F.3d 537, 542 (4th Cir.), *cert. denied,* 517 U.S. 1239, 116 S.Ct. 1890, 135 L.Ed.2d 184 (1996), did not involve a car search, it is instructive regarding the broad question of whether precautionary measures taken by police to secure an arrestee ultimately render illegal a search incident to arrest. On appeal, the defendant challenged the admission of evidence recovered

during a warrantless search of a bag found to contain heroin and Han's wallet and driver's license. Han argued, *inter alia,* that federal agents conducted an illegal search incident to arrest, because "the bag had been moved away from him, and the agents had already alleviated their safety concerns." *Id.*

The Fourth Circuit acknowledged that the search was briefly delayed as a result of precautions taken by the agents to secure the arrestee. Nevertheless, the court recognized that "officers may separate the suspect from the container to be searched, thereby alleviating their safety concerns, before they conduct the search." *Id.* at 542. Moreover, the court said that a valid search incident to arrest may be conducted "even after the likelihood of danger or destruction of evidence has been eliminated," so long as "the time and distance between elimination of the danger and performance of the search were reasonable." *Id.* at 543. Because the brief delay in searching Han's bag was "objectively reasonable," it resulted in a "marginal infringement" of the defendant's rights. *Id.* Accordingly, the court held that "when a container is within the immediate control of a suspect at the beginning of an encounter with law enforcement officers; and when the officers search the container at the scene of the arrest; the Fourth Amendment does not prohibit a reasonable delay ... between the elimination of danger and the search." *Id.* at 543.

We find especially persuasive the court's concern that an officer might decide to forego the use of security measures if he or she knows that the resulting delay would jeopardize the officer's right to conduct a search incident to arrest. Recognizing that the search of the bag would clearly have been lawful if performed immediately, the court said:

> To deem this search unreasonable would encourage officers either 1) to proceed more hastily than necessary, risking unnecessary infringement on rights, or 2) to allow the dangerous condition to continue during their deliberate investigation.

*Id.* at 543.

Other courts have also recognized that a search incident to arrest is not unlawful merely because a brief delay results

from an officer's use of reasonable procedures to secure the suspect. *United States v. Fleming,* 677 F.2d 602 (7th Cir. 1982), is instructive. There, when the suspects were arrested, they dropped paper bags that they had been carrying. The police recovered the bags and searched them after the suspects were handcuffed. On appeal, the defendants challenged the warrantless searches because, at the time of search, they were handcuffed, the bags were already in the custody of police, and they had "no realistic chance to grab" the bags. *Id.* at 607. The court rejected the defense's contention that the justification for a warrantless search incident to arrest had evaporated, stating: "[T]he right to conduct a *Chimel* search is not so evanescent." *Id.* at 606. Moreover, the court considered it salient that, when the defendants were arrested, the bags were within their reach. In upholding the search of the bags, the court reasoned:

> [I]t does not make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures. Thus handcuffing ... should not be determinative, unless we intend to use the Fourth Amendment to impose on police a requirement that the search be absolutely contemporaneous with the arrest, no matter what the peril to [the police] or to bystanders.

*Id.* at 607 (footnote omitted). *See United States v. Turner,* 926 F.2d 883, 887–88 (9th Cir.), *cert. denied,* 502 U.S. 830, 112 S.Ct. 103, 116 L.Ed.2d 73 (1991) (upholding search incident to arrest even though, as a safety precaution, suspect was handcuffed and removed from room prior to search).

In the instant matter, the search occurred within minutes of the arrest of appellee, but while appellee was handcuffed and seated in a police vehicle. If the logic of appellee's position were adopted, however, it could mean that an officer who fails to take reasonable precautions to secure a suspect in the vicinity of a vehicle, whether for the safety of the officer or for others, would actually be rewarded by being permitted to conduct a vehicle search. On the other hand, under appellee's analysis, the officer who employs reasonable safeguards to secure a suspect would not be entitled to conduct a car search,

because the risk of the arrestee's access to the vehicle is ordinarily eliminated with the use of security measures. The folly of that argument is self evident. If a contemporaneous vehicle search is constitutional in the absence of security measures, it ought to be lawful when reasonable security measures are promptly utilized before the search is executed. Indeed, the use of safety procedures should be encouraged.

We have reviewed numerous cases from other jurisdictions, both federal and state, that have addressed the issue presented here. Despite appellee's contention that the cases are evenly divided on the question of the legality of a vehicle search under facts similar to those present here, most of the courts have taken the position that a contemporaneous vehicle search conducted incident to a lawful custodial arrest is not rendered illegal merely because the search occurred while the arrestee was handcuffed and seated in a police vehicle at the scene. We turn to review some of these cases.

*United States v. Karlin*, 852 F.2d 968 (7th Cir.1988), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989), is instructive. Karlin was initially apprehended in a parking lot by two citizens who had chased him to his van because he was a suspect in a burglary. When the officer arrived on the scene, Karlin was partially in the vehicle. The officer handcuffed Karlin, patted him down, and placed him in the rear of the squad car. Thereafter, the officer searched the van and recovered a revolver and a stocking cap. In the appeal of his conviction for federal firearms violations, Karlin complained that the weapon should have been suppressed under the Fourth Amendment, because the police did not conduct a lawful vehicle search incident to arrest. He reasoned that, by the time the vehicle was searched, the driver's seat was "no longer an area into which he could have reached," *id.* at 970, because he was already handcuffed and placed in the squad car at an undisclosed distance from his motor vehicle. The reasoning of the Seventh Circuit in upholding the search is persuasive:

Karlin seeks to distinguish *Belton* on the ground that the arrestees in that case appear to have been made less secure

than he, and were somewhat closer to their car. If those differences in degree are to control, the Court's preference for a straightforward rule for guidance of police officers and avoidance of hindsight determinations in litigation would be frustrated. It seems quite likely that, in instances where occupants of a car are arrested, they will be outside the car and will have been placed under some measure of security before the car is searched.

Karlin's contention would require a factual determination in each instance of how thoroughly the arrestee had been secured and his distance from the vehicle. It is significant that in *Belton*, the New York Court had determined, as Karlin proposes here, that by the time of the search there was no longer any danger that the arrestee or a confederate might gain access to the article.

*Id.* at 970–71.

In the Seventh Circuit's view, the police officer "followed reasonable procedure in securing custody of Karlin, and then proceeding with a search of the passenger compartment of the van into which Karlin might have reached at the time of arrest." *Id.* at 971–72. The court added: "We think, under *Belton*, such a search is deemed reasonable, without determining whether the officer had rendered Karlin incapable of reaching into the van." *Id.* at 972.

*United States v. Cotton*, 751 F.2d 1146 (10th Cir.1985), is also noteworthy. In that case, the Tenth Circuit rejected the defendant's contention of an illegal vehicle search incident to arrest, merely because the appellant was outside of his vehicle and handcuffed when the search occurred. The court explained:

The Supreme Court expresses quite clearly in *Belton* its goal to formulate a workable rule whereby an officer in the field may be able to evaluate the circumstances surrounding a lawful arrest to determine whether seizure of items in the immediate area of the arrestee is called for.... The rule ... does not require the arresting officer to undergo a detailed analysis, at the time of arrest, of whether the

arrestee, handcuffed or not, could reach into the car to see some item within it, either as a weapon or to destroy evidence, or for some altogether different reason.... The law simply does not require the arresting officer to mentally sift through all these possibilities during an arrest,. before deciding whether he may lawfully search within the vehicle. *Cotton*, 751 F.2d at 1148.

The case of *State v. Hopkins*, 163 Ga.App. 141, 293 S.E.2d 529 (1982), also provides guidance. There, the defendant was seated in a parked car when an officer recognized him with respect to a probation violation warrant. The police ordered the defendant to exit the vehicle and thereafter handcuffed him and placed him in the patrol car. The police then searched his vehicle and discovered a revolver. After the defendant was charged with possession of a firearm by a convicted felon, he unsuccessfully moved to suppress the weapon.

The *Hopkins* court recognized that the Supreme Court aimed to create a single standard that the police could readily apply when faced with the arrest of a person who emerged from a vehicle shortly before the arrest. The court said:

That "single standard" established in *New York v. Belton* for the "category of cases" in which the arrestee is a "recent" occupant of the car ... [who] no longer has access to it or its contents is: The officer "may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." ... "The area within the immediate control of the arrestee" is merely defined by *Belton* as being "the passenger compartment of the automobile in which he *was riding* ...." [just prior to arrest.] This "single standard" is applicable even though, as was true in *Belton*, at the time of the search of such a vehicle, articles in the passenger compartment are "unaccessible" to the arrestee.

*Hopkins*, 293 S.E.2d at 531 (internal citations omitted).

In concluding that the police conducted a lawful search incident to arrest, the court construed *Belton* to permit a

vehicle search incident to arrest so long as the vehicle was "recently occupied by an arrestee," even if, at the time of the search, the arrestee lacks immediate access to the vehicle that he or she had recently occupied. *Id.* at 530, 531. The court stated: "The decisive factor is whether the arrestee was, at the time of his *arrest,* a 'recent occupant' of the automobile, not whether the automobile and its contents were in his immediate control at the time of the *search.*" *Id.* at 530.

Numerous other cases support the State's position. *See, e.g., United States v. Mitchell,* 82 F.3d 146, 152 (7th Cir.1996), *cert. denied,* 519 U.S. 856, 117 S.Ct. 155, 136 L.Ed.2d 100 (1996) (concluding that "interior of the vehicle in which [occupant] was found immediately before the arrest" was lawfully searched incident to arrest; although the accused had been handcuffed and placed in police vehicle just prior to commencement of search, that action did "not affect the lawfulness of the search."); *United States v. Mans,* 999 F.2d 966, 968–69 (6th Cir.), *cert. denied,* 510 U.S. 999, 114 S.Ct. 567, 126 L.Ed.2d 467 (1993) (upholding vehicle search incident to arrest although defendant was placed in back seat of police cruiser during search and put under police guard; police may search passenger compartment of an automobile incident to lawful custodial arrest of occupant, without a warrant or probable cause, "even if the arrestee has been separated from his car prior to the search of the passenger compartment"); *United States v. Turner, supra,* 926 F.2d at 888 (upholding search incident to arrest although suspect was handcuffed); *United States v. White,* 871 F.2d 41, 44 (6th Cir.1989) (upholding vehicle search incident to lawful arrest, even though arrestee was handcuffed and separated from his vehicle at time of search); *United States v. McCrady,* 774 F.2d 868, 871–72 (8th Cir.1985) (upholding search incident to arrest, notwithstanding that arrestee had been removed from the scene); *United States v. Ciotti,* 469 F.2d 1204, 1207 (3rd Cir.1972) (upholding search of briefcases incident to arrest, although appellants were handcuffed at time of search), *vacated on other grounds,* 414 U.S. 1151, 94 S.Ct. 907, 39 L.Ed.2d 105 (1974); *United States v. Harris,* 617 A.2d 189, 193 (D.C.1992) (upholding

vehicle search incident to arrest of driver, although search occurred while arrestee was handcuffed and locked inside police cruiser); *Staten v. United States*, 562 A.2d 90, 91 (D.C.1989) (upholding search of locked glove compartment in vehicle as incident to arrest for alcohol related driving violation); *State v. Haught*, 122 Idaho 104, 831 P.2d 946, 948 (1992) (upholding vehicle search as incident to arrest, notwithstanding that defendant was handcuffed and placed in police patrol car at time of search and had "little or no chance of destroying evidence or obtaining a weapon"); *People v. Loftus*, 111 Ill.App.3d 978, 67 Ill.Dec. 598, 444 N.E.2d 834, 838 (1983) (sustaining search incident to lawful arrest although, at time of search, defendant was handcuffed and placed in rear of police squad car and guarded by police); *State v. Miskolczi*, 123 N.H. 626, 465 A.2d 919, 921 (1983) (sustaining search of vehicle as incident to defendant's lawful arrest, although search was conducted while arrestee was handcuffed and placed in rear seat of police cruiser); *State v. Cooper*, 304 N.C. 701, 286 S.E.2d 102, 104 (1982) (upholding vehicle search as incident to arrest when, at time of search, defendant was seated in rear of patrol car; "The fact that defendant ... was sitting in a police vehicle instead of standing on the street under an officer's supervision fails to remove the factual setting from the scope of *Belton*."); *State v. Hensel*, 417 N.W.2d 849, 853 (N.D.1988) (upholding search. of suitcase located in arrestee's vehicle as incident to arrest, because search did not exceed scope of *Belton*, which unconditionally allowed contemporaneous search of passenger compartment incident to lawful arrest of occupant; search was lawful although it was conducted after driver was arrested, handcuffed, and placed in police car and had "little or no chance of destroying evidence or obtaining a weapon from his vehicle."); *State v. Smith, supra*, 835 P.2d at 1030 (upholding search of "fanny pack" as incident to arrest, notwithstanding that defendant was handcuffed and in police car during search, and search occurred 17 minutes after arrest; "A delay of 17 minutes is not unreasonable ... where the delay results solely from the officer's reasonable actions designed to secure the

premises and to protect herself and the public."); *see also United States v. Queen*, 847 F.2d 346, 352–54 (7th Cir.1988) (generally discussing cases upholding searches incident to arrest even though arrestees were handcuffed).

The cases cited by appellee in support of his position are factually distinguishable from the case *sub judice*. *See United States v. Ramos–Oseguera*, 120 F.3d 1028, 1036 (9th Cir.1997), *cert. denied*, 522 U.S. 1135, 118 S.Ct. 1094, 140 L.Ed.2d 149 (1998) (concluding that vehicle search was not a contemporaneous search incident to arrest, because search occurred after police brought car to police station, and while defendants were inside police station); *United States v. Adams*, 26 F.3d 702, 705 (7th Cir.1994) (concluding that search was not incident to arrest because defendant was "not an occupant of the searched vehicle immediately prior to arrest, [and] he was not affirmatively linked to it until after he was detained and handcuffed," and because arrestee "was in no position at the moment of his arrest to remove weapons or evidence from the area searched"; rather, at time of arrest, defendant was standing "about three-quarters of a car [length] and a locked door away" from the passenger compartment of the vehicle); *United States v. Strahan*, 984 F.2d 155, 159 (6th Cir.1993) (concluding that vehicle search was not incident to arrest because suspect was arrested after parking and exiting vehicle, as he approached a bar located approximately 30 feet from vehicle; police did not arrest an "occupant" of vehicle, nor was passenger compartment within arrestee's immediate control); *United States v. Fafowora*, 865 F.2d 360, 362 (D.C.Cir.1989) (finding unlawful a vehicle search as incident to arrest after arrestees parked and exited vehicle to avoid federal agents and were approximately one car length away from vehicle at time of arrest; although *"Belton* sought 'to avoid case-by-case evaluations' " of whether defendant's area of control extended to particular place of search, facts did not satisfy "rationale for *Belton's* bright-line rule" because police encountered arrestees when they were outside of vehicle and passenger compartment of Jeep was not within "immediate surrounding area" to which arrestees had access); *see also United States v. Vasey*, 834

F.2d 782, 787 (9th Cir.1987) (concluding that police had no right to search vehicle under guise of search incident to arrest when search occurred approximately 30 to 45 minutes after defendant was arrested, handcuffed, and placed in police vehicle).

In *Belton,* the Supreme Court's holding expressly applied to a contemporaneous vehicle search that was incident to "a lawful custodial arrest of the occupant of an automobile." *Belton,* 453 U.S. at 460, 101 S.Ct. 2860. Our reading of *Belton,* which is consistent with the views of the majority of courts that have considered the issue presented here, governs our resolution of this appeal. The police initiated contact with appellee when he was the occupant of a motor vehicle; the Jeep, which was the object of the search, was under appellee's control when he was stopped by the troopers; appellee's subsequent arrest was unquestionably lawful; the search of the Jeep was conducted promptly after the arrest, albeit while appellee was secured. Events subsequent to appellee's arrest but prior to the search did not render the search unreasonable; the safety precautions utilized by the troopers did not transform a lawful search incident to arrest into an illegal one.

**JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY REVERSED; COSTS TO BE PAID BY TALBOT COUNTY.**