[No. C009037. Third Dist. Dec. 24, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
DAVID LAWRENCE STOFFLE, Defendant and Respondent.

**COUNSEL**

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant

Attorney General, Roger E. Venturi and Thomas F. Gede, Deputy Attorneys General, for Plaintiff and Appellant.

Neil Rosenbaum, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

DAVIS, J.—Defendant was charged with cocaine possession. (Health & Saf. Code, § 11350.) After the magistrate granted defendant's motion to suppress at the preliminary hearing, the superior court granted the People's motion to reinstate the complaint. Eventually, defendant succeeded in convincing the superior court to grant his consolidated motion to suppress and motion to set aside the information; from this superior court decision the People appeal. The issue on appeal is whether the evidence was seized from the passenger compartment of defendant's car as a search incident to arrest within the meaning of *New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860]. We conclude that defendant was placed under lawful custodial arrest when he was a recent occupant of his car. As an incident to that arrest, Officer Mertell was justified in contemporaneously searching the passenger compartment of defendant's car, and in seizing evidence of narcotics found therein. We shall reverse the granting of both the motion to suppress and the motion to set aside the information.

### BACKGROUND

At around noon on May 25, 1988, defendant and his companion Shaw were drinking beer in a West Sacramento city park in violation of a city ordinance which makes it a misdemeanor to consume alcohol in a public park. West Sacramento Police Officer Christopher Mertell approached and observed defendant and Shaw while the two were standing at the rear of a car, holding cans of beer. Mertell then observed defendant standing at the window of the car with the beer can in his hand, and saw him lean through the open window into the car. Mertell later saw the can on the floorboard of the car between the driver's seat and the passenger's seat. Shaw threw his can into the trash.

Mertell initially intended only to warn defendant and Shaw about the ordinance. Notice of the ordinance was given on posted signs in the park. After requesting identification from both Shaw and defendant, Mertell gave them the warning. In answer to Mertell's inquiry, defendant acknowledged the car belonged to him.

Following standard department procedure, Mertell then ran warrant checks. During that time he verified their drivers' license status and the car registration. Within three to four minutes, Mertell learned from the warrant check that defendant had outstanding warrants for traffic violations. Defendant was then placed under arrest based on these warrants.[1] Mertell informed defendant that he (defendant) would more than likely be "cited out to appear in court" after being taken to the station.

While handcuffed and seated in the rear of the patrol car, defendant asked Mertell if he could have his cigarettes, which defendant said were in the "area of the front seat" of his car. Complying with defendant's request, Mertell examined this area. Immediately he saw a small black film canister in the driver's seat, wedged between the bottom and the back of the seat. Mertell testified at the preliminary hearing that in his experience "[t]hese containers often times carry contraband," so he pulled the container out.[2] Looking inside, Mertell found three bindles of cocaine, which later measurements disclosed contained approximately .07 grams. Mertell informed defendant he was under arrest for possession of cocaine for sale, and then conducted an additional search of the car, revealing various drug paraphernalia.

At his preliminary hearing, defendant moved to suppress under Penal Code section 1538.5. (All further references to undesignated statutory sections are to the Penal Code.) The magistrate granted the motion and discharged defendant after finding insufficient evidence to hold him to answer. A month later the superior court granted the People's motion to reinstate the complaint, under section 871.5, subdivision (a). The case was eventually certified to the superior court.

---

[1] Defendant was never cited for drinking in the park.

[2] Mertell testified that the top of the canister was partially off when he saw it, and the top came off completely as he pulled it out. However, even if Mertell actually pulled the lid off to determine the contents, the search is still valid as incident to an arrest. It is unnecessary to determine whether the film canister was obviously incriminating, because we decide the case on the basis of a search incident to arrest rather than the plain view doctrine. (See *People* v. *Valdez* (1987) 196 Cal.App.3d 799, 806-807 [242 Cal.Rptr. 142]; see also fn. 4, *post.*)

In the superior court, defendant again moved to suppress the evidence and, in a companion motion, moved to set aside the information under section 995. The superior court denied both motions on procedural grounds. Upon defendant's petition, this court issued a writ directing the superior court to rule on the merits of these motions. After hearing further argument from each of the parties, the superior court granted both motions and dropped the matter from calendar. The People's timely appeal followed.

DISCUSSION

I

*Standard of Review*

■ In deciding the reasonableness of the search and seizure at issue in this case, we are bound by the lower court's findings of fact as long as they are supported by substantial evidence. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596 [174 Cal.Rptr. 867, 629 P.2d 961], reaffirming *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) However, we determine independently the legal issue of whether, on the facts found, the search was reasonable within the meaning of the Constitution. (*Leyba, supra,* 29 Cal.3d at p. 597.)

II

*The Search Was Incident to Defendant's Arrest Within the Meaning of New York v. Belton (1981) 453 U.S. 454*

■ Since the facts of this case occurred after the passage of Proposition 8, "only that evidence which was illegally obtained under *federal* constitutional standards must now be suppressed in California courts." (*People* v. Gutierrez (1984) 163 Cal.App.3d 332, 334 [209 Cal.Rptr. 376]; see also *In re*

*Lance W.* (1985) 37 Cal.3d 873, 885-887 [210 Cal.Rptr. 631, 694 P.2d 744].) We therefore look to federal law to determine whether Officer Mertell conducted a valid search of defendant's car, incident to defendant's arrest on the traffic violation warrants.[3]

The dispositive issue presented here is: can police search the passenger compartment of an arrestee's vehicle when the police contact and arrest the person at the rear of his vehicle a brief time after he got out of the vehicle? We hold that police may conduct such a warrantless search as an incident of the arrest.

In *Belton*, a state patrol officer stopped a car for speeding. Upon smelling burnt marijuana and seeing an envelope which he associated with marijuana, the officer ordered the four men out of the car and arrested them for possession of marijuana. After frisking and separating the four men, the officer searched the passenger compartment of the car, where he found a leather jacket belonging to one of the four. Unzipping one of the jacket pockets, the officer discovered cocaine. The Supreme Court upheld the search, enunciating a bright-line rule for auto searches incident to arrest.

The court began with the principle established in *Chimel v. California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] that a "contemporaneous search without a warrant of the person arrested and of the immediately surrounding area" is justified incident to a lawful custodial arrest "because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." (*Belton, supra,* 453 U.S. at p. 457 [69 L.Ed.2d at p. 773], quoting *Chimel, supra,* 395 U.S. at p. 763 [23 L.Ed.2d at p. 694]). The court then determined the meaning of Chimel's "immediate control" principle within the context of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants. Noting the problems that law enforcement officers had experienced in determining

---

[3] Although Mertell testified he did not *enter* the car with the express purpose of conducting a search—recall, he entered at defendant's request, he obviously decided to make a search at the point he pulled the canister out and looked inside. Therefore, Mertell did conduct a "search." We proceed to the question of whether Officer Mertell's search was lawful under the circumstances.

whether an area is within an arrestee's actual reach, and the need for a "workable, straightforward rule," the court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (*Id.* at pp. 459-460 [69 L.Ed.2d at p. 775], fns. omitted.) This rule effectively exchanged the *Chimel* actual grabbing area for a hypothetical grabbing area when the arrest involves a vehicle occupant. Under *Belton*, four components must be satisfied for a valid search of the interior of an auto incident to arrest. The facts of this case show these four components were satisfied here.

■ First, there must be a "lawful custodial arrest." (*Belton, supra,* 453 U.S. at p. 460 [69 L.Ed.2d at pp. 774-775].) ■ Defendant argued below that his arrest was invalid because the initial detention to run the warrant check was unjustified. He does not raise this point in this appeal. In any event, we find the initial detention was reasonable, as it was based on a misdemeanor committed in Officer Mertell's presence (§ 836, subd. 1), it lasted only three to four minutes, and Mertell ran the warrant check pursuant to standard police procedure while he checked the driver licenses and the car registration. A warrant check under these circumstances is proper under the authority of *People* v. *McGaughran* (1979) 25 Cal.3d 577 [159 Cal.Rptr. 191, 601 P.2d 207]. Therefore the subsequent arrest based upon the extant warrants for traffic violations was lawful and, since both parties agree the arrest was a custodial one, the threshold requirement of "lawful custodial arrest" is met.

■ Second, the search must be contemporaneous with the arrest. (*Belton, supra,* 453 U.S. at p. 460 [69 L.Ed.2d at pp. 774-775].) This is a temporal requirement that the search be conducted at or near the time of arrest. Here, Officer Mertell testified he placed defendant, handcuffed, in the patrol car and "all in a matter of a minute" he walked over to defendant's car, where he immediately discovered the film canister. Since the search occurred immediately after defendant's arrest, it was "contemporaneous" within the meaning of *Belton.*

■ Third, police may only search the passenger compartment of an auto when the search is incident to an arrest. (*Belton, supra,* 453 U.S. at p. 460

[69 L.Ed.2d at pp. 774-775].) ██ ██ Defendant does not contend that Mertell searched anything other than the passenger compartment of the car.[4]

Fourth and finally, the arrestee must have been an occupant or recent occupant of the auto searched. (*Belton, supra,* 453 U.S. at p. 460 [69 L.Ed.2d at pp. 774-775].) Defendant appears to argue that in order to qualify as an "occupant" within the meaning of *Belton,* the police must come upon the arrestee while he or she is actually in the vehicle. We do not think *Belton* is so limited.[5] Although the actual holding of *Belton* refers only to an "occupant," in the discussion leading up to the holding the court applied its rationale to an occupant or "recent occupant." Implicitly, the court recognized the many situations where police make the arrest outside the car for one reason or another, rather than while the person is actually sitting in the car. We assume the court meant to include in its bright-line rule those situations like here, where the arrestee was a recent occupant of the vehicle and closely connected to it at the time of his arrest. (*Belton, supra,* 453 U.S. at p. 460 [69 L.Ed.2d at pp. 774-775].)

Defendant cites *U.S.* v. *Fafowora* (D.C. Cir. 1989) 865 F.2d 360, 362 for the proposition that ". . . . where police come upon the arrestees outside of an automobile . . . the rationale [of] *Belton's* bright-line rule is absent . . . ." However, we do not find *Fafowora* persuasive. That case misreads the *Belton* rationale, and is out of step with the majority of similar cases decided after *Belton.* The facts in *Fafowora* were that Drug Enforcement Agency (DEA) agents had pursued a vehicle defendants were driving. Defendants had parked the vehicle and were walking, approximately one car length away, when they were arrested. The agents then seized evidence from the passenger compartment of the vehicle. Under the facts of *Fafowora,* the true rationale of *Belton* would have been served by allowing police to search

---

[4]Under *Belton,* "police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." (453 U.S. at p. 460 [69 L.Ed.2d at p. 775], fn. omitted.)

[5]Defendant also appears to argue that we are bound by the magistrate's *factual* finding that he was not an occupant of the car. Defendant is mistaken. The question of whether defendant was an occupant of the car is a *legal* one that we determine independently based on the facts found by the magistrate.

the arrestees' car. Clearly, the arrestees in *Fafowora* were recent occupants since DEA agents had been pursuing them in the car. The fact that the arrestees were outside their car and approximately one car length away from it when police came upon them should make no difference. The Supreme Court has determined that " '[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " (*Belton, supra,* 453 U.S. at p. 458 [69 L.Ed.2d at p. 774], quoting *Dunaway* v. *New York* (1979) 442 U.S. 200, 213-214 [60 L.Ed.2d 824, 836, 99 S.Ct. 2248].)

Prior to *Belton, Chimel* defined the permissible scope of a search incident to arrest as the area within the arrestee's immediate control. Where the arrestee was an occupant or recent occupant of an auto, however, police had difficulty in determining whether the passenger compartment was actually within an arrestee's reach. In attempting to define a "workable" definition of what is within an arrestee's immediate control in this unique situation, the court in *Belton* departed somewhat from the *Chimel* definition. (*Chimel, supra,* 395 U.S. at p. 763 [23 L.Ed.2d at p. 694].) Rather than adopting a case-by-case approach, the court generalized that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' " (*Belton, supra,* 453 U.S. at p. 460 [69 L.Ed.2d at pp. 774-775], quoting *Chimel, supra,* 395 U.S. at p. 763 [23 L.Ed.2d at p. 694].)

It appears the court in *Fafowora* applied the *Chimel* standard of what is actually within the arrestee's reach, rather than the more hypothetical *Belton* standard. Although the police in *Fafowora* came upon the arrestees outside the car, we think the passenger compartment was "generally, even if not inevitably" within the area into which the arrestees could have reached, and the search in that case should have been justified as an incident to the arrests.

Furthermore, such a result would be consistent with the near uniform rule in the federal courts that even where the arrestee is handcuffed and locked in a patrol car the police may search the passenger compartment of the arrestee's vehicle under *Belton*. These cases note the purpose of the *Belton* rule was to eliminate the necessity of police making a case-by-case decision as to what area an arrested occupant could actually reach and note the practical reality that an arrestee is often restrained in some fashion before a search is

undertaken. (See *U.S.* v. *White* (6th Cir. 1989) 871 F.2d 41, 43-44 [defendant placed in back of patrol car]; *U.S.* v. *Karlin* (7th Cir. 1988) 852 F.2d 968, 970-971; *United States* v. *McCrady* (8th Cir. 1985) 774 F.2d 868, 870 [defendant in police car]; *United States* v. *Cotton* (10th Cir. 1985) 751 F.2d 1146, 1148 [defendant handcuffed]; for similar holdings by state appellate courts, see *State* v. *Miskolczi* (1983) 123 N.H. 626 [465 A.2d 919] [defendant handcuffed and in a police car at time of search]; *State* v. *Cooper* (1982) 304 N.C. 701 [286 S.E.2d 102] [defendant in patrol car]; *State* v. *Winston* (W.Va. 1982) 295 S.E.2d 46 [defendant handcuffed at distance from vehicle]; *Traylor* v. *State* (Del.Super. 1983) 458 A.2d 1170 [defendant in handcuffs]; *State* v. *Valdes* (Fla.Dist.Ct.App. 1982) 423 So.2d 944 [defendant in patrol car]; *State* v. *Hopkins* (1982) 163 Ga.App. 141 [293 S.E.2d 529] [same]; *State* v. *Reed* (Tenn.Crim.App. 1982) 634 S.W.2d 665 [same]; *People* v. *Loftus* (1983) 111 Ill.App.3d 978 [444 N.E.2d 834] [defendant handcuffed in parked car].)

This court has followed the lead of these federal courts, and recently upheld a search of the passenger compartment of an auto, conducted while the arrestee was confined in a locked patrol car. (See *People* v. *Hunt* (1990) 225 Cal.App.3d 498, 506-509 [275 Cal.Rptr. 367].) Similarly, it makes no difference that defendant was locked in the patrol car at the time Mertell searched the passenger compartment of his car.

Ultimately, defendant asks us to distinguish *Belton* and other search incident to arrest cases on the grounds that those cases all involved "car stops." Although the facts of *Belton* did involve a car stop for a traffic violation, *Belton*'s holding should not be read so narrowly. The Supreme Court intended to establish a bright-line rule so that officers would not have to make case-by-case determinations of what is actually within the arrestee's reach.

█ In the typical case, the car is stopped for a traffic violation, and either the driver or a passenger is arrested. For whatever reason, the car is searched and contraband is seized. In these cases the arrestee is clearly a recent "occupant." Less clear, however, is the case where the person has occupied the car a short time prior to arrest, but is not actually sitting in the car when arrested. In that instance there must be circumstances which show the person still had, at the moment of arrest, a close association with the car. Such circumstances exist, for example, where, as here, the arrestee has acknowledged he owns the car, has recently been physically in the car, and while staying close to the car continues to have access to it. In such a situation, the arrested person has such a close association with the car that he could just as easily grab a weapon or evidence as if police came upon him

while he was sitting in the car. Under *Belton*, officers are entitled to search the car in these circumstances.[6]

We conclude that when Officer Mertell arrested defendant, he was arresting a recent occupant of the vehicle he thereafter searched. (See fn. 3, *ante*.) Defendant's car was in the parking lot of a city park, and defendant acknowledged prior to his arrest that the car was his. The check of the car registration confirmed defendant's ownership. Most importantly, defendant was physically present in the car just prior to arrest. Mertell saw defendant lean into the car while he was holding the beer can, and later found the beer can on the floorboard. Defendant kept his cigarettes in the car, and asked Mertell to remove them for him.

The clear inference to be drawn from these facts is that defendant or his companion Shaw drove defendant's car to the park, where defendant remained closely connected to the car. Defendant did not distance himself from the car, in either time or space. The rationale behind auto searches incident to arrest, as discussed previously, is just as compelling in this case as in a typical "car stop" case, since the passenger compartment was well within defendant's general reaching distance at the time of his arrest. Under these circumstances, we find that defendant was an occupant or recent occupant of his car, and the "search" of the passenger compartment was therefore valid as incident to his arrest.

Related to the argument that defendant was not an occupant of the car because he was not stopped in the car is the argument that the search is invalid because defendant's arrest had "nothing to do with his occupancy of the car." Apparently relying on the magistrate's finding that the search must be one for "fruits or instrumentalities" of the crime for which the person is arrested, the defendant attempts to insert a "nexus requirement" into the federal law on this subject. There is no such requirement.

In numerous cases the federal courts have upheld searches incident to arrest under *Belton*, where the evidence discovered during the search had

---

[6]Other courts have applied *Belton* by determining that an arrestee is an "occupant" even where the arrestee had not yet entered the car at the time of the arrest. (See, e.g., *U.S.* v. *Arango* (7th Cir. 1989) 879 F.2d 1501, cert. den. 493 U.S. 1069 [107 L.Ed.2d 1019, 110 S.Ct. 1111] [defendant about one block away from car at arrest]; *United States* v. *Garcia* (8th Cir. 1986) 785 F.2d 214, 225 [defendant "in or just entering" his car]; *United States* v. *Bautista* (1st Cir. 1984) 731 F.2d 97 [defendant arrested as he approached auto, after coming out of a convenience store]; *State* v. *McGee* (Iowa 1986) 381 N.W.2d 630 [defendant was "about to enter his car" when police approached and arrested him]; *State* v. *Harvey* (Mo. 1983) 648 S.W.2d 87 [defendant had just gotten into the car and started it].) Here, defendant had been a recent occupant of the car just before his arrest and was still closely connected to it at the time of his arrest. We decline to address whether a search of a vehicle's passenger compartment incident to an arrest of a person who is about to enter the vehicle is permissible under *Belton*.

nothing to do with the crime for which the person was arrested, or where it was just as unlikely as in defendant's case that weapons would be found. (See, e.g., *U.S.* v. *Fiala* (7th Cir. 1991) 929 F.2d 285 [defendant's arrest for driving without a valid license justified auto search for narcotics]; *U.S.* v. *Valiant* (8th Cir. 1989) 873 F.2d 205 [search of locked briefcase valid where defendant arrested for being in possession of a stolen car and traffic offenses); *U.S.* v. *Pino* (6th Cir. 1988) 855 F.2d 357 [defendant's arrest for traffic offense justified search for narcotics]; *United States* v. *Cotton, supra,* 751 F.2d 1146 [defendant convicted on evidence uncovered in auto search incident to a totally unrelated arrest]; *United States* v. *Schecter* (3d Cir. 1983) 717 F.2d 864 [defendant arrested for driving under the influence, and auto search uncovered evidence of stolen goods].)

■ There is no requirement under federal search and seizure law that an auto search incident to an occupant's arrest must have some nexus between the item to be seized and the crime for which the occupant was arrested. Indeed, one of the rationales for the search-incident-to-arrest exception is the safety of the arresting officer. This rationale is dependent upon the *mere fact* of a custodial arrest rather than the *nature* of the offense comprising the arrest. (See *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467].)

### DISPOSITION

The lower court's decision granting the defendant's motions under sections 995 and 1538.5 is reversed.[7] We remand for further proceedings consistent with this opinion.

Puglia, P. J., and Carr, J., concurred.

A petition for a rehearing was denied January 17, 1992, and respondent's petition for review by the Supreme Court was denied March 12, 1992. Mosk, J., was of the opinion that the petition should be granted.

---

[7]Because we find that this was a valid search incident to arrest, we do not reach the question of whether the search was valid under either the plain view or inevitable discovery doctrines, raised in the People's brief.