Filed 8/20/14  P. v. Vo CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOHN  VAN VO,<br><br>    Defendant and Appellant. | F066758<br><br>(Super. Ct. No. F11902923)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. James R. Oppliger and Mark W. Snauffer, Judges.◊

Daniel Malakauskas for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, R. Todd Marshall and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

◊ Judge Oppliger presided over appellant's suppression hearing; Judge Snauffer presided over the trial.  Judge Oppliger is a Retired Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## INTRODUCTION

Appellant John Van Vo contends his conviction for violating Health and Safety Code section 11360, subdivision (a), unlawful transportation of marijuana, should be reversed because the trial court erred in denying his motion to suppress and in refusing to instruct the jury with a special instruction on the affirmative defense of marijuana collectives. We reject his claims of error and will affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Fresno County Sheriff's Deputy Jacob Jensen was working highway enforcement on Interstate 5 (I5) in Fresno County on April 26, 2011. Jensen was in uniform, using a marked Sheriff's Department patrol vehicle, and accompanied by his partner, Detective Israel Rubacalva. While patrolling around 11:00 a.m. on southbound I5, Jensen spotted a gray Hyundai following a silver Lexus too closely, traveling around 70 miles per hour.

Jensen carried out a standard vehicle stop and after the Hyundai pulled over, Jensen saw that Vo was the driver and sole occupant. As Jensen approached Vo, he saw two large buckets in the rear of Vo's vehicle labeled "Ona Gel, fresh linen" and saw that Vo was wearing a shirt marked "Kush Life." Through his prior narcotics enforcement experience, Jensen knew Ona Gel was often used by marijuana traffickers to disguise the odor of the marijuana and "Kush" was a high quality strain of marijuana.

Jensen explained to Vo why he had been stopped and discussed the appropriate distance between cars traveling highway speeds. Jensen asked Vo for his license, registration, and proof of insurance; he also asked Vo where he was traveling from and where he was headed. Vo responded that he was going from San Jose to Los Angeles to deliver the Ona Gel and some other items to a friend.

Jensen was suspicious that Vo was transporting marijuana and he asked Vo if he had anything "illegal" in the vehicle and Vo said he did not; Jensen asked if Vo had any drugs, weapons, or large sums of money in the vehicle. Again, Vo stated he did not. Jensen asked Vo if he could search the vehicle; Vo refused to give consent. Jensen then

2.

called Detective Ramiro Rodriguez, who had a narcotics K-9 unit. Rodriguez arrived within 10 minutes of the call and after arriving, had the canine begin to sniff the area around the outside of the vehicle.

At the back of the vehicle, the dog sat down, indicating the canine detected the odor of a narcotic. After the canine alerted to the back of the vehicle, Jensen had Vo step out of the vehicle and stand with Rubacalva, who was filling out the citation for the traffic stop.

When Jensen opened the trunk of the Hyundai, he found five individually wrapped bundles in a duffel bag. The bundles were wrapped "excessively" in cellophane and placed inside the duffel bag, along with fabric softener dryer sheets. Based upon his experience and training, Jensen believed the bundles were heavily wrapped, and dryer sheets were in the duffel bag, to mask the odor of narcotics, frequently marijuana. The bundles totaled five pounds of marijuana.

Jensen had previously stopped around 100 people found to be in possession of marijuana. In his experience, of those people he had stopped who legally possessed marijuana, the marijuana was in smaller Ziploc bags or a paper bag.

Jensen had received special training in narcotics, specifically marijuana, and the questions to ask to help determine if a person legally possessed a drug; Jensen was aware there might be a legitimate reason to possess marijuana, even in large quantities. He had several training classes on medical marijuana and the law surrounding medical marijuana. Jensen asked Vo if there was a legitimate reason he was in possession of so much marijuana; Vo responded that he was a "caregiver and vendor."

Because Vo stated he was a caregiver and vendor, Jensen followed up with standard questions. Vo stated he was taking the marijuana from a collective in San Jose to a collective in Los Angeles. Jensen understood a "collective" to be a "store front where they sell marijuana." Jensen asked to see Vo's paperwork; sometimes those

3.

transporting marijuana for a collective have paperwork stating the person is acting as an agent of the collective and transporting the marijuana for the collective.

Vo stated he was being paid $400 to transport the marijuana; he had no paperwork with him. Vo indicated he did have paperwork at home, specifically a "recommendation to use and possess marijuana for medicinal purposes." Vo also stated that language in "Prop 15" allowed him to possess up to seven pounds of marijuana. Jensen told Vo Proposition 15 had no such provision; this comment was based upon his training.

Jensen asked Vo for the name of the collective he had obtained the marijuana from and the name of the collective to which it was being delivered. Vo declined to answer. This response made Jensen suspicious that Vo was not transporting for a collective, as he claimed, and Jensen told Vo the marijuana was being seized.

Vo was charged on September 27, 2011 with possession of marijuana for sale and transportation of marijuana. Vo pled not guilty to both charges. On July 12, 2012, Vo filed a motion to suppress the evidence seized by Jensen. On July 26, 2012, after presentation of evidence and arguments, the trial court denied the motion.

Trial commenced on September 18, 2012. Jensen testified to the events surrounding the traffic stop of Vo's vehicle and the subsequent discovery of the marijuana. At trial, Jensen opined that the street value of the marijuana was between $7,500 and $20,000; the quantity of marijuana would supply over a year's worth of marijuana for a medical marijuana user.

Christopher Conrad testified for the defense. Conrad had written several books on medical marijuana, spent time in Holland and Switzerland overseeing the cultivation of marijuana, worked on the campaign to legalize the use of marijuana in California, and testified as an "expert witness" in multiple court cases dealing with marijuana. Conrad testified that the marijuana seized from Vo was consistent with medical grade marijuana. According to Conrad, nothing about the way the marijuana was packaged indicated it was packaged for illegal transportation.

4.

Dr. William Eidelman also testified for the defense. Eidelman described himself as a consultant in alternative medicine. On May 18, 2010, he wrote a recommendation for medical marijuana for Vo. Eidelman testified that as part of his recommendation, he had indicated Vo could have up to six pounds for personal use because of Vo's chronic pain; it would be the amount Vo would need for a year's use.

On September 25, 2012, the jury found Vo guilty of transportation of marijuana and not guilty of possession of marijuana for sale. On January 4, 2013, after considering the probation report, the trial court placed Vo on felony probation with various terms and conditions. Vo filed a notice of appeal on February 22, 2013.

## DISCUSSION

Vo raises two issues in this appeal. First, he contends the trial court erred in denying his suppression motion. Second, Vo contends the trial court erred when it refused to give a proffered special instruction on the rights of medical marijuana patients involved in marijuana collectives.

### I. Motion to Suppress

In this appeal, Vo contends that the use of a trained narcotics detection canine amounted to an unreasonable search under the Fourth Amendment; therefore, the fruits of the search should have been suppressed by the trial court. Vo concedes, however, that in the trial court he never argued that a narcotics dog sniffing for marijuana constituted a search, but asserts the issue is preserved. We conclude the issue is forfeited. Regardless, the trial court properly denied the suppression motion.

Vo's motion to suppress was heard on July 26, 2012. The prosecution stipulated that because the search and seizure had been conducted without a warrant, the prosecution had the burden of justifying the search and seizure. Vo challenged the officers' testimony that he was following another car too closely and thus, the traffic stop was not warranted; and argued the detention, although not unduly prolonged, was inappropriate because the real purpose was to focus on offenses unrelated to the alleged

traffic offense. The prosecution asserted that the narcotics canine activity did not prolong the detention and did not constitute a search.

### *Factual Summary*

Both Jensen and Rubacalva testified at the suppression hearing. Jensen testified that a traffic stop of Vo's car was initiated for violating Vehicle Code section 21703, following too closely. Vo's car was stopped at 11:07 a.m. Jensen then approached Vo's car and had a discussion with him about following at a safe distance; Vo disagreed that there had been a reason for the stop; all of this consumed about 5 minutes.

At the end of this discussion, Jensen asked Vo for his driver's license, proof of insurance, and registration. When Vo handed these items to him, Jensen walked back to his vehicle and handed them to Rubacalva so Rubacalva could write the citation. Because Jensen was concerned that Vo's vehicle might contain narcotics, he then immediately called Rodriguez to bring the narcotics canine; Rodriguez arrived in about 3 minutes.

Once Rodriguez arrived, the dog was immediately removed and brought toward Vo's car, where the animal alerted. After the canine alerted to the back of Vo's vehicle, a search was conducted.

Meanwhile, Rubacalva was running a check through the patrol vehicle's computer to see whether Vo had any outstanding warrants and to verify registration information. The entire process took around 8 to 10 minutes. While Rubacalva was engaged in this process, Rodriguez arrived with the narcotics canine. Rubacalva finished writing the citation just after the narcotics canine completed his walk around Vo's vehicle and alerted.

At the conclusion of the hearing, the trial court found that Vo had been following two car lengths behind another car, traveling at 70 miles per hour, and that justified the traffic stop by Jensen and Rubacalva. The trial court also found the detention was not unduly prolonged because the canine sniff was conducted before Rubacalva finished

writing the citation. The trial court wanted an opportunity to review the case authority cited by the parties, and deferred a final ruling on the motion until later that afternoon.

In issuing its ruling that afternoon, the trial court found that although there was good cause for the traffic stop, the traffic stop was a "pretext" and there was an "independent investigation" conducted; however, the detention was not unduly prolonged and a "dog sniff is not a search." Citing *People v. Brown* (1998) 62 Cal.App.4th 493, 498-499 (*Brown*), the trial court denied the suppression motion.

*Analysis*

Vo failed to contend in the trial court that the narcotics dog sniffing the vehicle constituted a search, although that is the issue he raises on appeal. This issue was not preserved for appellate review.

> "[U]nder [Penal Code] section 1538.5, as in the case of any other motion, defendants must specify the precise grounds for suppression of the evidence in question, and, where a warrantless search or seizure is the basis for the motion, this burden includes specifying the inadequacy of any justifications for the search or seizure.… Defendants cannot ... lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*People v. Williams* (1999) 20 Cal.4th 119, 130-131.)

Having failed to assert in the trial court that the canine sniff was a search, Vo is precluded from raising this issue on appeal. (*People v. Williams, supra,* 20 Cal.4th at pp. 130-131.) Regardless, Vo's contention fails on the merits.

In reviewing a Penal Code section 1538.5 ruling, this court must uphold any factual findings, express or implied, that are supported by substantial evidence. An appellate court independently must assess, as a question of law, whether the challenged search or seizure conforms to the constitutional standard of reasonableness. Questions regarding the suppression of evidence are controlled by federal constitutional law. (*In re Lance W.* (1985) 37 Cal.3d 873, 896; *People v. Leyba* (1981) 29 Cal.3d 591, 596-598.)

Here, Jensen testified that Vo was following two car lengths behind the car ahead of him, which was too close for freeway speeds and constituted a violation of Vehicle Code section 21703.  The trial court found Jensen and Rubacalva were justified in effecting a traffic stop.

First, even if the traffic stop was pretextual, the traffic stop is valid.  A "pretextual" stop occurs when the police employ a stop for an observed traffic violation as a device to investigate or search for evidence of an unrelated offense for which probable cause is lacking.  (See *U.S. v. Trigg* (7th Cir. 1989) 878 F.2d 1037, 1039.)  Even though Jensen had a subjective motivation at the time he stopped Vo's vehicle, that subjective motivation does not invalidate the stop when the objective facts justify the stop.  (*People v. Uribe* (1993) 12 Cal.App.4th 1432, 1436.)  Here, the stop was objectively reasonable because Jensen had observed Vo traveling too closely and initiated the stop. Jensen's subjective motivation did not render the initial stop constitutionally defective.  (*Ibid.*)  Jensen's observation and testimony were sufficient to establish a basis for initiating the stop.  (*Id.* at p. 1435.)  Under the view prevailing in the federal and California courts, a pretextual stop and investigation are not improper if the officer was legally authorized to make the stop, regardless of the officer's subjective intent to generate evidence of an unrelated offense.  (*People v. Valencia* (1993) 20 Cal.App.4th 906, 914-918 (*Valencia*); *People v. Miranda* (1993) 17 Cal.App.4th 917, 924-925 (*Miranda*).)

Second, as the trial court found, the detention was not unduly prolonged. (*People v. Grant* (1990) 217 Cal.App.3d 1451, 1458 (*Grant*) [stop at minimum may be the time required by the officer to write out the citation and obtain the offender's promise to appear, as well as ask for driver's license and the registration card of the vehicle]; *Valencia, supra,* 20 Cal.App.4th at p. 918 [once having properly stopped a vehicle, an officer may ask for and examine the license of the driver and may remove the driver from the car in order to do so]; *Brown, supra,* 62 Cal.App.4th at pp. 497-500 [during routine

8.

traffic stop, officer may run warrant check and ask permission to search while awaiting results of such check]; *People v. Stoffle* (1991) 1 Cal.App.4th 1671, 1679 [a short detention to run warrant check pursuant to standard police procedure while officer checked the driver's license and the car registration was proper]; see *U.S. v. Shabazz* (5th Cir. 1993) 993 F.2d 431, 435-437 [car stopped for speeding; officers could question driver about his travels]; *People v. Bell* (1996) 43 Cal.App.4th 754, 768 [unintrusive and nonaccusatory questions about where driver was coming from and what he had been doing are permissible].) In Vo's case, the detention lasted no longer than was necessary to explain to Vo why he was stopped, run a warrants check, verify registration information, and write the citation.

The sniffing of the area around the vehicle by the narcotics canine did not constitute a Fourth Amendment search. A dog sniff conducted during a lawful traffic stop that reveals no information other than the location of a substance that "no individual has any right to possess" does not violate the Fourth Amendment. (*Illinois v. Caballes* (2005) 543 U.S. 405, 409.) We reject Vo's contention that because he had a marijuana recommendation, the dog sniff constituted an unlawful search.

Pursuant to the Controlled Substances Act (CSA), 21 U.S.C. section 801 et. seq., federal law prohibits the possession, distribution, or manufacture of marijuana. (*Gonzales v. Raich* (2005) 545 U.S. 1, 9, 15; *Sacramento Nonprofit Collective v. Holder* (E.D.Cal. 2012) 855 F.Supp.2d 1100, 1108-1109.) The CSA's prohibitions on the possession, distribution, or manufacture of marijuana are fully enforceable in California. (*City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc.* (2013) 56 Cal.4th 729, 740.)

Furthermore, while Vo had a protectable privacy interest in the contents of the trunk of his vehicle, there is no protectable privacy interest in the air space around the vehicle or the air, and scent, which emanated from the trunk. (*People v. Bautista* (2004) 115 Cal.App.4th 229, 235 (*Bautista*); *People v. Mayberry* (1982) 31 Cal.3d 335, 341.)

9.

The sniffing by a narcotics dog of the area outside a vehicle does not constitute a search under the Fourth Amendment. (*People v. Stillwell* (2011) 197 Cal.App.4th 996, 1004.) It is well-settled that an alert by a narcotic sniffing dog provides probable cause for a subsequent search. (*Bautista, supra,* 115 Cal.App.4th at p. 236; *Estes v. Rowland* (1993) 14 Cal.App.4th 508, 529.)

Vo's reliance on *Williams v. Superior Court* (1985) 168 Cal.App.3d 349 for the proposition that an "independent investigation" was impermissibly commenced is unpersuasive. The appellate court in *Williams* found that the detention had been unduly prolonged beyond the time necessary for completing the traffic citation and "unnecessary extension of the traffic detention to investigate extraneous matters" may not take place without an independent, reasonable suspicion that the driver has committed other offenses. (*Id.* at pp. 358-359.) Jensen and Rubacalva discussed the reason for the stop with Vo, listened to Vo's explanation, asked for pertinent documents, ran a records check, and wrote the citation, all of which is appropriate for a routine traffic citation. (*Miranda, supra,* 17 Cal.App.4th at p. 927.) Vo's detention was not prolonged to complete the traffic citation process; the dog sniff was completed shortly before the citation was issued.

After the narcotics canine alerted, Jensen had an independent, reasonable suspicion that Vo might be committing other offenses. (See *Grant, supra,* 217 Cal.App.3d at p. 1459 [not "routine" stop once additional observations made to support suspicion of additional criminal activity – officer could lawfully do more than write out a citation]; *Williams v. Superior Court, supra,* 168 Cal.App.3d at p. 358 [circumstances of each traffic detention are unique and the reasonableness of each detention period must be judged on its particular circumstances].)

In fact, had Vo challenged the narcotics canine sniffing the vehicle as a search in the trial court, in all likelihood the prosecution would have elicited from Jensen what caused him to be "concerned" about narcotics after approaching Vo's vehicle.

10.

Presumably Jensen would have testified to those facts he observed in plain view—an excessive amount of air freshener in the vehicle and Vo's T-shirt inscribed with the marijuana slogan "Kush Life"—as providing a reasonable suspicion of criminal activity, even before the narcotics canine alert. (*Miranda, supra,* 17 Cal.App.4th at p. 927 [a traffic stop can provide an officer with an opportunity to observe what is in plain view].)

In sum, we conclude the trial court did not err in denying the motion to suppress.

## II. Instruction on Marijuana Collectives

The second issue raised by Vo in this appeal is that the trial court erred in refusing to instruct the jury with a special instruction pertaining to Health and Safety Code section 11362.775 regarding marijuana collectives. Vo asserts that he established a collective defense and the trial court had a duty to instruct on the defense. The People contend that Vo failed to present any evidence at trial that he was part of a marijuana collective; therefore, the trial court's refusal to issue the instruction was not error. We agree with the People.

### *Factual Summary*

During the trial, Jensen testified that Vo explained the large quantity of marijuana found in the trunk by stating he was a "caregiver and vendor." Vo told Jensen he was being paid $400 to take the marijuana from a collective in San Jose to a collective in Los Angeles. When Jensen asked for the names of the marijuana cooperatives, Vo declined to answer the question and would not provide any name of a cooperative.

Conrad and Eidelman testified for the defense. Conrad testified that the marijuana found in Vo's trunk was consistent with medical grade marijuana; marijuana was typically cultivated in Northern California; and marijuana typically would be transported to Southern California. Eidelman testified Vo came to him in May of 2010 with a complaint of chronic pain; Eidelman wrote a recommendation for medical marijuana.

11.

Vo did not testify at trial. No one testified that Vo was a member of a collective or that he possessed a valid identification card indicating he belonged to a marijuana cooperative. Vo made no offer of proof that any particular cooperative existed.

Vo offered a special instruction stating the following:

> "Possession of marijuana is lawful if authorized for the Compassionate Use Act. In order for the Compassionate Use Act to apply the defense must produce evidence tending to show that his possession or cultivation of marijuana was for personal medical purposes or as a member of a collective with a physician's recommendation or approval. The amount of marijuana possessed must be reasonably related to the patient, and collective's current medical needs. If you have a reasonable doubt about whether the defendant's possession was unlawful under the Compassionate Use Act you must find the defendant not guilty."

The trial court stated it was rejecting the special instruction because it was not a correct statement of the law; there was "no issue of member of a collective with respect to the defense"; and the subject was adequately covered by other instructions.

*Analysis*

"It is settled that a court must instruct on general principles of law that are closely and openly connected with the facts of the case. [Citation.] The duty to instruct sua sponte on general principles encompasses the duty to instruct on defenses that are raised by the evidence …." (*People v. Perez* (1992) 2 Cal.4th 1117, 1129.) The trial court's duty to instruct on affirmative defenses arises when a defendant is relying on the defense *and* there is substantial evidence to support the defense. (*People v. Salas* (2006) 37 Cal.4th 967, 982.) With respect to a medical marijuana defense, the defendant has the burden of proving facts underlying this affirmative defense. (*People v. Mower* (2002) 28 Cal.4th 457, 476-479.)

Health and Safety Code section 11362.775 permits a defense to marijuana related charges if the defendant is: (1) a qualified patient, person with a valid identification card or a designated primary caregiver; *and* (2) the defendant associates with similarly situated

12.

people to collectively or cooperatively cultivate marijuana. (*People v. Colvin* (2012) 203 Cal.App.4th 1029, 1037.)  A medical marijuana cooperative or collective must file articles of incorporation with the state and operate for the mutual benefit of its members. (*People v. Solis* (2013) 217 Cal.App.4th 51, 57 (*Solis*).)  To establish the second prong of this affirmative defense, relevant evidence includes the size of the collective's membership; its operating procedures; its registered nonprofit status with financial records, including any processes or procedures by which the collective makes itself accountable to its membership; and an operator's testimony as to the nonprofit nature of the collective. (*Id.* at pp. 57-59.)

Contrary to Vo's claim, there was no substantial evidence presented at trial that he was a member of a marijuana collective or claiming to be a member of a marijuana collective.  Vo never stated to Jensen that he was a member of a marijuana collective; Vo stated he was being paid by a marijuana collective to transport marijuana.  Vo refused to name the alleged marijuana collective that was paying him, or that was the intended recipient of the marijuana Vo was transporting.  Neither Conrad nor Eidelman testified that Vo was a member of a marijuana collective.

Vo did not present any evidence identifying the name of any marijuana collective, let alone any evidence that the marijuana collective was incorporated as a nonprofit by the state; no financial records were produced; no operator of the collective testified; and no evidence was presented on the collective's processes and procedures. (*Solis, supra,* 217 Cal.App.4th at pp. 57-59.)

Vo presented virtually no evidence, let alone substantial evidence, establishing he was a part of a qualified marijuana collective or cooperative and entitled to invoke the affirmative defense set forth in Health & Safety Code section 11362.775.  As such, the trial court properly refused the special instruction proffered by Vo for this affirmative defense.

13.

## **DISPOSITION**

The judgment is affirmed.

_____
Gomes, Acting P.J.

WE CONCUR:


_____
Detjen, J.


_____
Franson, J.

14.