Filed 3/17/16  P. v. Niccoli CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRYAN VICTOR NICCOLI,<br><br>    Defendant and Appellant. | F070948<br><br>(Super. Ct. No. MF011327A)<br><br><br>**OPINION** |

<u>**THE COURT**</u>*

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

Paul Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, R. Todd Marshall and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Levy, Acting P.J., Kane, J. and Smith, J.

## INTRODUCTION

Pursuant to a plea agreement, appellant Bryan Victor Niccoli pled no contest to being a convicted felon in possession of a firearm, a violation of Penal Code[1] section 29800, subdivision (a)(1).  In his appeal, Niccoli contends the trial court erroneously denied his suppression motion.  We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Around 7:30 p.m. on July 30, 2014, Kern County Sheriff's deputies were on patrol near Mojave when they noticed an individual, later determined to be Niccoli, riding a motorcycle without a helmet.  A records check came back with the information that Niccoli was on postrelease community supervision (PRCS).  Police used Niccoli's status as grounds to search his residence, where they uncovered evidence that formed the basis of the charges filed against Niccoli.

In an information filed August 25, 2014, Niccoli was charged in count 1 with theft of a firearm, a violation of section 487, subdivision (d)(2); in count 2, with being a convicted felon in possession of a firearm, a violation of section 29800, subdivision (a)(1); in count 3, with being a felon in possession of ammunition, a violation of section 30305, subdivision (a)(1); in count 4 with receiving stolen property, a violation of section 496, subdivision (a); and in count 5 with possession of narcotics paraphernalia, a violation of Health and Safety Code section 11364.1.  It was alleged that Niccoli had served two prior prison terms as set forth in section 667.5, subdivision (b).  Niccoli pled not guilty and denied the prior prison term allegations.

Niccoli filed a motion to suppress evidence on October 30, 2014, asserting the police did not have a reasonable suspicion on which to detain him and the detention was unduly prolonged.  The People filed opposition to the motion on November 17, 2014.

---

[1]      References to code sections are to the Penal Code unless otherwise specified.

An evidentiary hearing on the suppression motion was held on December 29, 2014. Kern County Sheriff's Deputy David Manriquez testified for the People; Niccoli and his father Michele Niccoli, testified for the defense.

Manriquez testified that around 7:30 p.m. on July 30, 2014, he made a vehicle stop because he saw a motorcycle being operated on a paved roadway and the driver was without a helmet. Manriquez activated his siren and lights to effect the traffic stop. He saw that the driver was Niccoli and Manriquez "had a couple prior contacts" with Niccoli. Manriquez inquired of Niccoli why he was not wearing a helmet; Niccoli responded that it was "just a mistake" and he was headed home, which was about 100 yards away from where he had been stopped by Manriquez.

Niccoli did provide his identification to Manriquez and Manriquez used it to contact dispatch to do a records check on Niccoli, something Manriquez does every time he effects a traffic stop. Manriquez requested the records check prior to issuing a ticket, which is his normal procedure. Manriquez believed Niccoli to be on probation because about two or three weeks earlier, Manriquez was part of a team that had conducted a probation search at Niccoli's residence. Prior to participating in the probation search, Manriquez had determined that Niccoli was "searchable for weapons, narcotics, narcotics paraphernalia and stolen property."

Manriquez spoke with Niccoli about his probation status and testified that Niccoli stated he believed he still was on probation. Manriquez asked Niccoli "if he wouldn't mind if me and my partner conducted a probation search" of his residence and Niccoli responded "okay." From the earlier probation search of which he had been a part, Manriquez understood that Niccoli lived in a secondary residence "on a pretty good sized piece of property" where Niccoli's father lived in the main residence. Manriquez testified that Niccoli gave permission to search both the main and secondary residences on the property. Manriquez instructed Niccoli to proceed to his residence while the officers followed in their patrol car.

3.

Manriquez testified that when the records check came back, it disclosed that Niccoli was on PRCS for a section 245 conviction, assault with a deadly weapon. Because Niccoli was on PRCS for a felony conviction, Manriquez knew Niccoli was not allowed to possess ammunition or firearms. Manriquez told Niccoli that his father previously had stated Niccoli was not allowed to keep anything in the main house, only the secondary residence; Manriquez asked if there was anything "illegal inside the residence." Niccoli paused and stated there were firearms inside the residence. Niccoli believed the firearms were not loaded and indicated he had been target shooting that morning.

At this point, Manriquez handcuffed Niccoli and placed him in the back of the patrol vehicle. Manriquez proceeded to conduct a search of the secondary residence where Niccoli lived and uncovered two rifles with ammunition in the bedroom, and a glass pipe of the type used for smoking methamphetamine in the living room.

After finishing the search, Manriquez read Niccoli his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 from the card he carries for that purpose. Niccoli agreed to speak and indicated it was "just a misunderstanding" because he had gone target shooting and forgot and left the loaded guns in his bedroom. Niccoli stated the guns belonged to "Victor." Niccoli admitted that he and Victor had had a "falling out" and Victor would probably claim the guns were stolen. Niccoli acknowledged the glass pipe was used for smoking methamphetamine, but wasn't sure if the pipe was his.

Niccoli's father testified that he asked the officers why they wanted to search when a search had been conducted "just a few days ago." Niccoli's father also testified that his son, Niccoli, "spouted off" that he didn't have any "search terms" and to bail him out of jail.

Niccoli testified at the suppression hearing, initially stating he told the officers he was on probation, then testifying he told them he was not on probation. Niccoli testified he had received a letter from his probation officer in May 2014 and after receiving the

4.

letter was under the impression he no longer was on probation. Niccoli did not have the letter on him or at his home that day; it was in his girlfriend's purse. Niccoli testified he did not consent to a search of his residence and told the officers he was not on probation and not subject to search terms, but the officer told him a search would be conducted because of the probation terms.

A PRCS printout from the probation department disclosing that Niccoli's probation status had terminated on September 12, 2013 was admitted into evidence. The PRCS printout also disclosed that Niccoli had been scheduled to be terminated from PRCS on July 23, 2015, but had for some reason been released early on September 12, 2013. The letter from the probation officer also was admitted into evidence. Both exhibits were admitted over the People's objection.

At the conclusion of the evidentiary portion of the hearing, the parties argued the merits of the motion. The trial court did "not find it likely" that Niccoli told officers he was on probation; but found that Niccoli "consented to the search" although the trial court also found the consent was involuntary under the circumstances.

The trial court also found that the officers acted under a good faith belief that Niccoli was subject to search terms because Manriquez had participated in a probation search a few weeks prior to the traffic stop; and dispatch had reported that Niccoli was still subject to PRCS at the time of the stop. The trial court noted that on the PRCS printout, it states that PRCS would terminate on "7/23/2015" and the information that PRCS terminated early on September 12, 2013, appears several lines below the July 2015 date and it was reasonable for law enforcement to rely on the July 2015 date. The trial court took judicial notice that the entries on the printout are made by the court, or by probation acting as an "arm of the court" and therefore, the officers' reliance on the erroneous PRCS termination date fell within the "good-faith exception."

The trial court also found "no problem with the detention, itself." The trial court found that the length of the detention was not unreasonable, in that the officer received

5.

the records check information within a few minutes of effecting the traffic stop. The trial court denied the motion to suppress.

On December 30, 2014, as part of a plea bargain, Niccoli entered a plea of no contest to the count 2 charge, with the understanding that all remaining counts and allegations would be dismissed, and he would be sentenced to the upper term of three years for the count 2 offense.

Niccoli filed a notice of appeal on January 29, 2015.

## DISCUSSION

Niccoli challenges the trial court's denial of his suppression motion. Specifically, he contends: (1) the People failed to meet their burden of proving a good faith exception; and (2) the detention was unduly prolonged.

### I. Standard of Review

In ruling on a motion to suppress evidence, the trial court finds the historical facts, selects the rule of law, and applies it to the facts in order to determine whether the law has been violated. (*People v. Clark* (2014) 230 Cal.App.4th 490, 496.) An appellate court reviews the trial court's factual determinations under the deferential substantial evidence standard; the determination of whether the applicable law as applied to the facts discloses a violation of Fourth Amendment rights is subject to independent review. "'On appeal, we consider the correctness of the trial court's ruling *itself,* not the correctness of the trial court's *reasons* for reaching its decision."' (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 364-365.)

### II. Good Faith Exception

It is undisputed that Manriquez did not have a warrant to search Niccoli's residence and he was not on PRCS and subject to search terms at the time of the search. A defendant may move to suppress evidence on the grounds a search or seizure without a warrant was unreasonable. (§ 1538.5, subd. (a)(1)(A).) Niccoli contends the People

failed to meet their burden of proof that the officers acted in good faith in conducting a search of his residence. We disagree.

California courts may exclude evidence obtained in violation of the Fourth Amendment only if that exclusion is mandated by the federal Constitution. (Cal. Const., art. I, § 28; *People v. Robinson* (2010) 47 Cal.4th 1104, 1119 (*Robinson*).) Exclusion applies only where it results in "appreciable deterrence" to law enforcement conduct. (*Herring v. United States* (2009) 555 U.S. 135, 141 (*Herring*).) As the U.S. Supreme Court stated in *Herring*:

> "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." (*Herring, supra,* 555 U.S. at p. 144.)

The trial court made an explicit finding that the deputies acted in good faith when they searched Niccoli's residence. The factual determination by the trial court that the deputies did not engage in deliberate, reckless, or grossly negligent conduct, is reviewed under the deferential substantial evidence standard. (*Herring, supra,* 555 U.S. at p. 147, fn. 5; *Robinson, supra,* 47 Cal.4th at p. 1126.)

The evidence at the suppression hearing established that Manriquez had participated in a probation search at Niccoli's residence two or three weeks prior to the traffic stop. Prior to participating in the probation search, Manriquez "ran" Niccoli's name through the criminal justice system and determined that Niccoli was "searchable for weapons, narcotics, narcotics paraphernalia and stolen property." Manriquez also had participated in another search of Niccoli's residence, when Niccoli was living at a different location.

Manriquez also testified that the sheriff's substation maintained a list of those people currently on probation, electronic monitoring, and PRCS; Niccoli's name was on

7.

the list.  On the PRCS printout, it states that PRCS for Niccoli would terminate on "7/23/2015" and the information that PRCS terminated early on September 12, 2013, appears several lines below the July 2015 date.  When Manriquez called dispatch and asked for a records check on Niccoli, he was told by dispatch that Niccoli "was on PRCS" for a felony.

These facts provide substantial evidence supporting the trial court's finding that the officers acted in good faith in searching Niccoli's residence.  (*Herring, supra,* 555 U.S. at p. 147, fn. 5; *Robinson, supra,* 47 Cal.4th at p. 1126.)  There was no showing that the inclusion of Niccoli's name on the PRCS report was symptomatic of widespread error, deliberate, or reckless.  Excluding the evidence would serve no appreciable deterrent purpose under these circumstances.  (*Herring, supra,* 555 U.S. at p. 141.)

Where official action is pursued in good faith, but there is later found to be a defect in a warrant or other basis for a search, the evidence seized as a result of the search is not excluded.  (See e.g., *United States v. Leon* (1984) 468 U.S. 897, 919-920; *People v. Downing* (1995) 33 Cal.App.4th 1641, 1656-1657; *People v. Fields* (1981) 119 Cal.App.3d 386, 390.)  Although it was later determined that Niccoli was not on PRCS and subject to search, this does not alter the initial justification for the search and the officers' objectively reasonable belief the search did not violate the Fourth Amendment.  (*United States v. Leon*, *supra*, 468 U.S. at pp. 919-920.)

## III.    Length of Detention

Niccoli also challenges the length of the detention, contending it was unduly prolonged.  We disagree.

Niccoli concedes the initial traffic stop and detention, for driving a motorcycle without a helmet, was reasonable and appropriate.  Where an officer has reason to believe that a driver has violated the Vehicle Code, the officer is authorized to stop a vehicle for purposes of investigation.  (See e.g., *People v. Uribe* (1993) 12 Cal.App.4th 1432, 1436 [unsafe lane change]; *People v. Castellon* (1999) 76 Cal.App.4th 1369, 1373 [expired

8.

registration].)  Niccoli's driving of the motorcycle without a helmet violated Vehicle Code section 27803.

An investigatory detention may exceed constitutional bounds when extended beyond what is reasonably necessary under the circumstances.  (*People v. Williams* (2007) 156 Cal.App.4th 949, 959.)  Typically, a reasonable investigation during a traffic stop may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his or her destination and purpose.  (*United States v. Ramos* (8th Cir. 1994) 42 F.3d 1160, 1163 (*Ramos*).)  A three to four minute records check during a traffic stop has been held to be a reasonable amount of time and to not unduly prolong a traffic detention.  (*People v. Stoffle* (1991) 1 Cal.App.4th 1671, 1679 (*Stoffle*).)

Manriquez testified that he followed his "normal routine" when he effected the traffic stop of Niccoli.  He informs the driver about "what they were doing wrong" and asks for identification.  Manriquez tells the driver to stay in the vehicle, or in this case to turn off the motorcycle, and runs the identification through dispatch.  There is no defined maximum time limit for a traffic detention; each detention is evaluated in light of its particular circumstances.  (*People v. Russell* (2000) 81 Cal.App.4th 96, 102 (*Russell*).)  There is no indication in the record that Manriquez's normal routine was prolonged in any way and the time necessary to perform these duties does not unduly prolong a traffic detention.  (*Ramos, supra,* 42 F.3d at p. 1163; *Stoffle, supra,* 1 Cal.App.4th at p. 1679.)

Once dispatch reported back to Manriquez that Niccoli was on PRCS and subject to a probation search, Manriquez decided to conduct a probation search since the stop had been made near Niccoli's residence.  The continued detention of Niccoli to conduct a probation search was warranted under the good faith exception; Manriquez reasonably believed that Niccoli was subject to a probation search and continued the detention to conduct a probation search.  (See *Russell, supra,* 81 Cal.App.4th at p. 102; *People v. Webster* (1991) 54 Cal.3d 411, 430-431.)

9.

The purpose of a probation search is "'to deter further offenses by the probationer and to ascertain whether he is complying with the terms of his probation.'" (*People v. Bravo* (1987) 43 Cal.3d 600, 610.) Once Niccoli stated there were firearms and ammunition inside the residence because he had been target shooting that morning, Niccoli had admitted violating section 29800, subdivision (a)(1) and section 30305, subdivision (a)(1), even if he was not on probation or PRCS because his status as an ex-felon prohibited possession of firearms and ammunition.

Although the trial court made factual findings that Niccoli (1) never stated he was on probation and subject to search conditions and (2) did not voluntarily consent to a search, the trial court also found that the officers did not unduly prolong the detention and acted reasonably and in good faith in conducting a probation search. The detention was not unduly prolonged under the circumstances; rather the length of the detention was extended by the officers' good faith belief that Niccoli was subject to PRCS search terms, in addition to their knowledge of his status as a felon who acknowledged having firearms in his residence. (*People v. Durant* (2012) 205 Cal.App.4th 57, 65-66.)

The trial court did not err in denying the motion to suppress.

## DISPOSITION

The judgment is affirmed.